STATE OF CONNECTICUT *v.* MICHAEL ATKINS
(AC 18693)

O'Connell, C. J., and Schaller and Hennessy, Js.[1]

---

[1] The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued September 21, 1999—officially released April 11, 2000

*Cameron Dorman*, special public defender, for the appellant (defendant).

*John A. East III*, assistant state's attorney, with whom, on the brief, was *James E. Thomas*, state's attorney, for the appellee (state).

### Opinion

SCHALLER, J. The defendant, Michael Atkins, appeals from the judgment of conviction, rendered after a jury trial, of the crimes of manslaughter in the second degree in violation of General Statutes § 53a-56 (a)[2] and carrying a pistol without a permit in violation of General Statutes § 29-35.[3] The defendant claims that the trial court improperly admitted (1) a witness' probable cause hearing testimony and (2) statements given to police officers contained in the witness' probable cause hear-

---

[2] General Statutes § 53a-56 (a) provides: "A person is guilty of manslaughter in the second degree when: (1) He recklessly causes the death of another person; or (2) he intentionally causes or aids another person, other than by force, duress or deception, to commit suicide."

[3] General Statutes § 29-35 (a) provides in relevant part: "No person shall carry any pistol or revolver upon his person, except when such person is within his dwelling house or place of business, without a permit to carry the same issued as provided in section 29-28. . . ."

ing testimony in violation of the defendant's rights of confrontation under the state and federal constitutions.[4] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. On January 29, 1991, Officer Michael Matthews of the Hartford police department, responding to a call at an address on Sumner Street in Hartford, found the victim, Hubert Pinnock, suffering from four gunshot wounds. The victim later died from the injuries. The defendant was arrested and charged with one count of murder, one count of conspiracy to commit murder and one count of carrying a pistol without a permit.

The evidence presented at the probable cause hearing consisted primarily of the testimony of Sumner Street residents. One of the witnesses, Ronnie Davis, had earlier given a statement to the police. Following his testimony at the probable cause hearing, Davis was charged with perjury and hindering prosecution. When called as a witness at the defendant's trial, Davis invoked his fifth amendment privilege against self-incrimination. At trial, the court admitted Davis' probable cause hearing testimony into evidence, finding Davis unavailable as a result of his invocation of his fifth amendment right.

After the court determined that Davis was unavailable and that his probable cause testimony bore adequate

---

[4] Although the defendant argues violations of his rights of confrontation under the state and federal constitutions, we will address only the claim of a violation of the defendant's federal constitutional right because the defendant has failed to provide an independent and adequate state constitutional analysis. See *State* v. *Genotti*, 220 Conn. 796, 811–12, 601 A.2d 1013 (1992); *State* v. *Perez*, 218 Conn. 714, 723, 591 A.2d 119 (1991); *State* v. *Geisler*, 25 Conn. App. 282, 283 n.2, 594 A.2d 985 (1991), aff'd, 222 Conn. 672, 610 A.2d 1225 (1992).

The right of confrontation guaranteed by the sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."

indicia of reliability, the court reporter read to the jury the transcript of his testimony. The state then called Steven Oborski, an inspector with the state's attorney's office, as a witness. Oborski's testimony addressed Davis' conduct during an interview prior to the defendant's probable cause hearing in which Oborski had Davis review his police statement. Oborski testified that Davis stated at that time that there were no inaccuracies in the statement and that the defendant had said, "I got him. I got him." Oborski's testimony elaborated on the impeachment of Davis during his testimony at the probable cause hearing.

In its instructions to the jury, the court emphasized that Oborski's testimony was solely for impeachment purposes and not for substantive use.[5] During deliberations, in response to a request by the jury to review Oborski's testimony, the jury was again reminded that Oborski's testimony was to be used only to assess the credibility of Davis. Additional facts will be discussed where relevant to the issues in this appeal.

I

The defendant first claims that the trial court improperly admitted into evidence the probable cause hearing testimony of Davis in violation of his federal constitutional right of confrontation. We disagree.

---

[5] The court instructed the jury as follows: "Now, there was also testimony regarding a prior inconsistent statement. This was the testimony of Inspector Steven Oborski following the reading of the transcript of the testimony of Ronnie Davis from a prior proceeding. Now this testimony was offered by the state to attack some statements made by Davis and read to you in the transcript by showing alleged inconsistencies. The alleged inconsistencies attested to you by Inspector Oborski are only to be considered by you with respect to the credibility of Ronnie Davis and not for substantive purposes; that is, not to show what actually happened that night. Again, with respect to the credibility of Ronnie Davis, you may give the alleged comments whatever weight you deem appropriate, if in fact you believe such comments were made as attested."

Davis, a witness for the state, testified at the defendant's probable cause hearing that he did not see the defendant holding a weapon the night the victim was shot. He told the police that he had seen the defendant with a weapon in the past, but not on the night of the shooting. He also testified that the defendant had asked him to dispose of a jacket, but not the jacket found in a dumpster across the street from where Davis resided, which jacket did not belong to the defendant. Davis testified further that he lied when he initially made a statement to the police that he had witnessed the defendant manipulating the slide mechanism on a handgun and stating, "I got him."

The defendant seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[6] "In the absence of any one of [the four *Golding* requirements for review of an unpreserved claim] the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." Id., 240. We conclude that the defendant has not established that, in the circumstances presented here, a constitutional violation clearly exists.

Under federal sixth amendment review, "[c]ases involving the admission of an unavailable declarant's prior statements . . . [give] rise to Confrontation Clause issues because hearsay evidence was admitted as substantive evidence against the [defendant]." (Internal quotation marks omitted.) *State* v. *Outlaw*, 216

---

[6] In *Golding*, our Supreme Court concluded that "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding*, supra, 213 Conn. 239–40.

Conn. 492, 503, 582 A.2d 751 (1990), quoting *Delaware* v. *Fensterer*, 474 U.S. 15, 18, 106 S. Ct. 292, 88 L. Ed. 2d 15 (1985). The sixth amendment "right of confrontation is not violated by the substantive use of a prior statement if the declarant is unavailable, and if that statement bears adequate indicia of reliability." (Internal quotation marks omitted.) *State* v. *Crump*, 43 Conn. App. 252, 264, 683 A.2d 402, cert. denied, 239 Conn. 941, 684 A.2d 712 (1996), citing *State* v. *Outlaw*, supra, 504–505.

In asserting that his rights under the confrontation clause were violated, the defendant argues that the trial court improperly admitted Davis' probable cause hearing testimony because his "unavailability" occurred as a result of the state's action in charging Davis with perjury. The defendant also argues that even if Davis was properly found to be unavailable, the court improperly admitted his prior testimony because it was inherently unreliable.

"In light of the fact-bound nature of the inquiry, [t]he trial court has broad discretion in determining whether the proponent has shown a declarant to be unavailable." (Internal quotation marks omitted.) *State* v. *Schiappa*, 248 Conn. 132, 141, 728 A.2d 466, cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999). "In determining whether the declarant is unavailable, we employ the definitions set forth in rule 804 (a) of the Federal Rules of Evidence." Id., 141–42. The invocation of a testimonial privilege, such as a witness' fifth amendment right against self-incrimination, satisfies the unavailability requirement. See Fed. R. Evid. 804 (a) (1); *State* v. *Frye*, 182 Conn. 476, 481, 438 A.2d 735 (1980).

A finding of unavailability may be supported when "the declarant's inability to give live testimony is in no way the fault of the State." *California* v. *Green*, 399 U.S. 149, 166, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970).

The defendant does not argue that the state caused Davis to perjure himself on the stand. Instead, the defendant argues that by selectively charging Davis with perjury when it could have charged both Davis and another witness with perjury, it engaged in purposeful conduct designed to cause Davis' unavailability at trial. The defendant offers no basis in law for this novel proposition. If the state uncovers criminal activity, it is obligated to pursue a charge against the perpetrator. Moreover, the defendant offers no explanation as to why Davis would not invoke his fifth amendment rights to preclude his testimony given the pending perjury charge. We conclude that the trial court did not abuse its discretion in finding Davis unavailable after he invoked his privilege against self-incrimination.

The defendant further argues that Davis' probable cause hearing testimony did not bear adequate indicia of reliability and should not have been admitted. "Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." (Internal quotation marks omitted.) *State* v. *Outlaw*, supra, 216 Conn. 505, quoting *Ohio* v. *Roberts*, 448 U.S. 56, 66, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980). "Prior testimony [at a pretrial hearing] is a well rooted exception to the hearsay rule." *State* v. *Malone*, 40 Conn. App. 470, 479, 671 A.2d 1321, cert. denied, 237 Conn. 904, 674 A.2d 1332 (1996), citing *Ohio* v. *Roberts*, supra, 72–73; *State* v. *Mayette*, 204 Conn. 571, 577, 529 A.2d 673 (1987); *State* v. *DeFreitas*, 179 Conn. 431, 452, 426 A.2d 799 (1980); *State* v. *Weinrib*, 140 Conn. 247, 249–52, 99 A.2d 145 (1953); *State* v. *Reis*, 33 Conn. App. 521, 528, 636 A.2d 872, cert. denied, 229 Conn. 901, 640 A.2d 118 (1994). Moreover, "testimony given at a probable cause hearing has the identical safeguards to insure reliability and trustworthiness as the testimony given at the trial." *State* v. *Parker*, 161 Conn. 500, 503, 289 A.2d 894 (1971).

The record demonstrates that the defendant had the opportunity to cross-examine Davis during the probable cause hearing. The test for admissibility is the opportunity "for a full and complete cross-examination." Id., 504. It was within the trial court's discretion, considering the absence of any restrictions on cross-examination at the time the testimony was given and the threat of a perjury charge for making a false statement, to determine whether Davis' testimony at the probable cause hearing was reliable. See *State* v. *Alvarez*, 216 Conn. 301, 314, 579 A.2d 515 (1990) (assessing inherent unreliability of witness' prior inconsistent written and tape-recorded statements for purpose of admission as substantive evidence against defendant when witness was available at trial). Furthermore, the court in *Ohio* v. *Roberts*, supra, 448 U.S. 73, stated that there are "guarantees of trustworthiness in the accoutrements of the preliminary hearing itself [and a court need not consider] the inherent reliability or unreliability of [a witness] and his story." The focus of the review in determining whether the testimony bore an adequate indicia of reliability is on the nature of the proceeding under which the testimony was taken, not on consideration of witness credibility extrinsic to the proceeding. See *State* v. *Outlaw*, supra, 216 Conn. 508. The fact that Davis was charged with perjury, therefore, does not equate to a characterization of his testimony as per se unreliable, and the court possessed adequate information to determine the reliability of the testimony.

We conclude that Davis' testimony at the probable cause hearing bore adequate indicia of reliability, and that the trial court did not abuse its discretion in allowing it to be read into evidence. Accordingly, in light of Davis' unavailability and the reliability of the probable cause hearing testimony, no clear violation of the defendant's right of confrontation under the sixth amendment occurred, and the defendant has not satis-

fied the third *Golding* requirement for review of his unpreserved claim.

## II

The defendant next claims that the admission of certain statements used to impeach Davis during the course of his examination at the probable cause hearing violated his right of confrontation. We disagree.

During the course of Davis' direct examination at the defendant's probable cause hearing, the state impeached Davis with prior inconsistent statements he had made to the police. Davis' police statement was later admitted at the probable cause hearing as substantive evidence pursuant to *State* v. *Whelan*, 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986). The defendant now argues that the transcript read at trial contained prior inconsistent statements made to the police, the use of which was impermissible pursuant to *State* v. *Williams*, 231 Conn. 235, 238, 645 A.2d 999 (1994). The state argues that the prior inconsistent statements were permissibly used at trial solely for impeachment purposes. We find the state's reasoning persuasive.

The content of the transcript of Davis' testimony read to the jury does not include any reference to the substantive use of the impeachment evidence. A *Whelan* statement is exceptional, and there is no reason, in light of the entirety of Davis' testimony, to attach greater significance to the state's impeachment at the probable cause hearing than would be attached to the impeachment of a witness under normal circumstances. Furthermore, as we noted in part I of this opinion, the state presented at trial the testimony of Oborski, who had taken the police statement from Davis. The trial court emphasized twice in the jury instructions that Oborski's testimony was to be considered solely for the purpose of impeachment of Davis' probable cause hearing testi-

mony. Given the use of Oborski's testimony, which was similar to the use of the police statement for impeachment of Davis at the probable cause hearing, it is reasonable that a jury would apply the limiting instructions to the impeachment testimony from the probable cause hearing. In any event, the defendant did not seek any limiting instruction for Davis' testimony and, considering the limiting instruction for Oborski's testimony, it is not "reasonably probable that the jury was misled by the failure [of the court sua sponte] to give a limiting instruction." *State* v. *Huckabee*, 41 Conn. App. 565, 575, 677 A.2d 452, cert. denied, 239 Conn. 903, 682 A.2d 1009 (1996), citing *State* v. *Fleming*, 198 Conn. 255, 269, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986).

The defendant also argues that prior inconsistent statements offered under *Whelan* at a prior proceeding may not be used in a subsequent proceeding when the witness is unavailable under *Williams*. The defendant's reliance on *Williams* is misplaced. *Williams* addressed the subsequent use at trial of a *Whelan* statement in the case of an unavailable witness. See *State* v. *Williams*, supra, 231 Conn. 250. The case before us involves the use for impeachment purposes of prior inconsistent statements, not the offer of prior inconsistent statements as substantive evidence under *Whelan*. The defendant cites no authority precluding the use of prior inconsistent statements elicited in the course of another proceeding when the prior statements were used for impeachment purposes. There is no reason that a jury would attach *Whelan* significance to the impeachment testimony without an affirmative act by the court or counsel, and there is no indication that *Whelan* was raised or discussed during the trial. Accordingly, the defendant's claim does not satisfy the third *Golding* requirement.

The judgment is affirmed.

In this opinion the other judges concurred.