STATE OF CONNECTICUT *v.* JERRY RODRIGUEZ
(AC 21086)

Foti, Dranginis and Healey, Js.

Argued December 4, 2001—officially released February 19, 2002

*Louis S. Avitabile*, special public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's

attorney, and *Cara F. Eschuk,* senior assistant state's
attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Jerry Rodriguez, appeals
from the judgment of conviction, rendered after a jury
trial, of sexual assault in the first degree in violation
of General Statutes § 53a-70 (a) (2)[1] and risk of injury
to a child in violation of General Statutes (Rev. to 1999)
§ 53-21 (2).[2] The defendant claims that the trial court
improperly (1) found that the child victim was not com-
petent to testify during the trial and (2) ruled that the
victim's testimony given during a competency hearing
was inadmissible evidence. We affirm the judgment of
the trial court.

The jury reasonably could have found the following
facts. At the time of the events giving rise to the defen-
dant's conviction, the victim was four years of age and
the defendant was twenty-three years of age. For
approximately eighteen months prior to December,
1997, the defendant resided with the victim, the victim's
mother and the victim's brother. Although the victim
usually referred to the defendant as "Daddy" or "Jerry,"
the defendant is not the victim's biological father. The
defendant is the biological father of the victim's
younger brother.

The defendant continued to have a somewhat amica-
ble relationship with the victim's mother and often vis-

---

[1] General Statutes § 53a-70 (a) provides in relevant part: "A person is
guilty of sexual assault in the first degree when such person . . . (2) engages
in sexual intercourse with another person and such other person is under
thirteen years of age and the actor is more than two years older than such
person . . . ."

[2] General Statutes (Rev. to 1999) § 53-21 provides in relevant part: "Any
person who . . . (2) has contact with the intimate parts, as defined in
section 53a-65, of a child under the age of sixteen years or subjects a child
under sixteen years of age to contact with the intimate parts of such person,
in a sexual and indecent manner likely to impair the health or morals of
such child . . . shall be guilty of a class C felony."

ited with her, the victim and the victim's brother even after he no longer resided with them. In January, 1999, the victim's mother was employed at a local video rental store; she customarily worked during the 5 p.m. until midnight shift. The victim's maternal grandmother or a female friend of the victim's mother often baby-sat the victim and her brother while their mother was at work.

On January 21, 1999, the defendant called the victim's mother and asked if he could baby-sit for the children while she worked that night. After the victim's mother agreed, the defendant picked up the children from the home of their maternal grandmother, picked up the keys to the victim's mother's house from her and took the children to their home. When the victim's mother arrived home from work sometime after 12:30 a.m., the children were sleeping in their beds, and the defendant was asleep on the sofa, where he spent the night.

On the evening of January 22, 1999, while the victim was using the bathroom, she complained to her mother that "her butt hurt." When her mother inquired as to the cause, the victim told her that "Daddy put a bone in my butt, and it hurts." On the next day, the victim's mother called the defendant on the telephone and asked him if he, during the prior evening, had physically reprimanded the victim or if anything else had occurred to explain the victim's statements. At trial, she testified that the defendant seemed upset and that he denied doing anything to hurt the victim. During the day on January 23, 1999, the victim complained sporadically that she felt pain. The victim's mother bathed the victim that night and again inquired of her as to why she felt pain. The victim reiterated the explanation that she had given her mother on the previous night and, as her mother testified, "pointed inside her butt."

The next day, the victim's mother took the victim to local police headquarters to report the victim's com-

plaints. The victim's mother then took the victim to a nearby hospital, where emergency medical personnel examined her. The victim reiterated her allegations about the defendant. On January 27, 2000, Judith Kanz, a certified pediatric nurse practitioner and an expert in evaluating children complaining of sexual abuse, examined the victim. The victim reported to Kanz an account of sexual abuse consistent with her earlier statements. Kanz also testified that, during her physical examination of the victim, she found a "borderline abnormal" dilation of the victim's rectum and that this finding caused concern as to whether something had penetrated her rectum. Joanne Iurato, a licensed clinical social worker who specializes in the field of abused children, also interviewed the victim. She testified that the victim told her that her mother's boyfriend, whom she identified as "Daddy" or "Jerry," had "put a bone in her butt and [that] it appeared to look like a piece of meat." On the basis of the evidence and expert testimony adduced at trial, the jury could reasonably have found that the defendant had sexually assaulted the victim.

I

The defendant first challenges the court's ruling that the victim was not competent to testify at trial. The defendant argues that the court (1) abused its discretion when it concluded that the victim was not a competent witness and (2) improperly rendered that decision after conducting a preliminary hearing, in violation of General Statutes § 54-86h,[3] to determine the victim's competency, rather than considering the issue after the victim

---

[3] General Statutes § 54-86h provides: "No witness shall be automatically adjudged incompetent to testify because of age and any child who is a victim of assault, sexual assault or abuse shall be competent to testify without prior qualification. The weight to be given the evidence and the credibility of the witness shall be for the determination of the trier of fact."

was called to testify during the evidentiary phase of the trial.

The record reflects that after the completion of jury selection but prior to trial, the defendant filed a motion captioned "Motion to Suppress and Strike Testimony of Minor Child as Being the Unreliable Product of Improperly Suggestive Interview Techniques and Therapy." At a pretrial hearing in which the court heard argument relevant to several motions, the court inquired of counsel as to how they wanted the court to proceed in considering the defendant's motion to suppress. The court decided to conduct the hearing at that time, rather than conducting the hearing during trial. The defendant concedes, as he must, that he did not object to the court's decision to conduct the hearing at that time.

The court thereafter heard testimony from the victim's mother and the victim. After the victim testified, both the prosecutor and victim's guardian ad litem acknowledged that the victim was not a competent witness. The defendant's attorney agreed with that assessment and stated: "I don't see how the court can find that she is a competent witness . . . ." Later that day, at the court's suggestion, the proceedings reconvened in a different courtroom wherein the victim was not able to see the defendant, but the defendant was able to monitor the proceedings via a one way mirror. The court, the prosecutor and the defendant's attorney undertook a further examination of the victim. At the conclusion of the examination, the prosecutor argued that the victim was a competent witness. The court concluded that the victim was not competent, and the defendant did not object to that ruling.[4]

[4] Evaluating a witness' ability to testify reliably is a matter peculiarly within the discretion of the trial court, and its rulings in that regard will be disturbed only in a clear case of abuse of that discretion or of some error in law. *State* v. *Bronson*, 258 Conn. 42, 54, 779 A.2d 95 (2001). We note that the defendant not only did not object to the court's ruling to suppress the

The parties agree that this issue was not preserved at trial. When a party raises a claim for the first time on appeal,[5] our review of the claim is limited to review under either the plain error doctrine as provided by Practice Book § 60-5,[6] or the doctrine set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). In his appellate brief, the defendant did not seek review of this claim under either of those doctrines. The defendant agrees that this is an unpreserved evidentiary claim and that, as such, it is not a claim for which *Golding* review is appropriate. See *State* v. *Paris*, 63 Conn. App. 284, 294–95, 775 A.2d 994, cert. denied, 257 Conn. 909, 782 A.2d 135 (2001).

"As this court has previously noted, it is not appropriate to engage in a level of review that is not requested." *State* v. *Hermann*, 38 Conn. App. 56, 65, 658 A.2d 148, cert. denied, 235 Conn. 903, 665 A.2d 904 (1995). At oral argument before this court, however, the defendant nevertheless argued that we should afford this claim plain error review. We do not agree.

victim's testimony but that he sought the hearing and outcome that he now challenges on appeal. The fact that he acquiesced in the court's procedure to conduct the hearing and the fact that he sought its eventual outcome weakens the strength of his argument that the court's ruling caused him harm.

[5] The defendant argues, and the record reflects, that he challenged the court's decision regarding the victim's competency, although not the timing of the court's hearing, in his motion for a new trial. "As we have often stated, this court will refrain from reviewing claims on evidentiary rulings in situations in which counsel has failed to make an objection. . . . We are not persuaded that evidentiary claims, not made at trial, can be preserved for appeal by raising them in a motion for a new trial after a guilty verdict. The problems inherent in allowing counsel to wait until after an adverse verdict to raise such objections to evidence are too obvious to warrant discussion." (Citations omitted.) *State* v. *Paris*, 63 Conn. App. 284, 294–95, 775 A.2d 994, cert. denied, 257 Conn. 909, 782 A.2d 135 (2001).

[6] Practice Book § 60-5 provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

Plain error review "is reserved for those truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Austin*, 244 Conn. 226, 241, 710 A.2d 732 (1998). Neither the timing of the court's competency evaluation nor the court's ruling implicates such concerns. Accordingly, we decline to review the defendant's claim.

## II

The defendant next claims that the court improperly excluded from the jury's consideration the victim's testimony during the competency hearing and certain statements concerning that testimony made by the victim to her guardian ad litem. We disagree.

The following additional facts are necessary for our resolution of this issue. At the conclusion of the state's case, the defendant moved for a judgment of acquittal. After the court denied that motion, the defendant's counsel informed the court that he wanted to introduce into evidence a copy of the transcript of the victim's testimony during the pretrial competency hearing and to introduce certain testimony from Sheila Prats, an attorney and the victim's guardian ad litem.

As part of the defendant's offer of proof, Prats testified that on the morning of the competency hearing, she, the defendant's counsel, the prosecutor and the victim's advocate met with the victim in the office of the victim advocate. Prats recalled that during the meeting, the victim asked everyone present to close their eyes. The victim then drew a picture. When asked about its significance, the victim answered that she depicted herself and Jerry, and that Jerry had "the bone" in his hand.

The record reflects that during the competency hearing, the defendant's counsel inquired of the victim as

to the picture that she had drawn earlier that morning. The victim stated that the picture depicted herself and "Papito,"[7] instead of Jerry. She also stated that it depicted Papito holding an ice cream cone, instead of Jerry holding "a bone." Prats further recalled that after the competency hearing, she privately asked the victim if she had told lies about Jerry. Prats testified that the victim looked at her, pointed her finger at her and said, "Listen, I said what I said."

The defendant sought the admission into evidence of the victim's testimony and her statements on the day of the competency hearing, for the truth of the matters asserted therein, as evidence that the victim recanted her allegations against the defendant. The court asked both parties to file written memoranda on the issue. The defendant claimed that this evidence was properly admissible under three exceptions to the hearsay rule: (1) the exception for the former testimony of an unavailable witness, (2) the exception for prior inconsistent statements and (3) the residual or catch-all exception. The court thereafter ruled that the hearsay evidence was not admissible because it was not reliable.

"On appeal, the trial court's rulings on the admissibility of evidence are accorded great deference. . . . Rulings on such matters will be disturbed only upon a showing of clear abuse of discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *Jurgensen*, 42 Conn. App. 751, 754, 681 A.2d 981, cert. denied, 239 Conn. 931, 683 A.2d 398 (1996). Hearsay is an out-of-court statement that is offered to establish the truth of the matters contained therein; *State* v. *Sharpe*, 195 Conn. 651, 661, 491 A.2d 345 (1985); and generally is inadmissible unless an exception to the general rule applies. *State* v. *Wargo*, 255 Conn. 113, 127, 763 A.2d 1 (2000).

---

[7] The victim refers to her biological father as "Papito."

To satisfy the requirements for the former testimony exception to the hearsay rule,[8] a movant must satisfy a two part test. The witness must be unavailable, and the former testimony must be determined to be reliable. *State* v. *Lapointe*, 237 Conn. 694, 737, 678 A.2d 942, cert. denied, 519 U.S. 994, 117 S. Ct. 484, 136 L. Ed. 2d 378 (1996). The reliability prong of the test requires that the issues testified about in the prior proceeding must be the same or substantially the same as the issues testified about in the present proceedings. *State* v. *Parker*, 161 Conn. 500, 503–504, 289 A.2d 894 (1971). Also, the party seeking the admission of the prior statement must demonstrate that the adverse party had the opportunity to conduct a full and complete examination of the declarant in regard to the statement. See *State* v. *Atkins*, 57 Conn. App. 248, 255, 748 A.2d 343, cert. denied, 253 Conn. 916, 754 A.2d 164 (2000); see also *State* v. *Malone*, 40 Conn. App. 470, 476–79, 671 A.2d 1321 (discussing admission of prior inconsistent statements in light of criminal defendant's right, under state, federal constitutions, to opportunity to cross-examine adverse witnesses), cert. denied, 237 Conn. 904, 674 A.2d 1332 (1996).

The court found, and the record reflects, that the state did not have the opportunity, during the competency hearing, to fully and completely examine the victim due to her unwillingness or inability to answer questions on the day of the competency evaluation. The court properly concluded that the victim's former testimony did not bear an adequate indicia of reliability. Such evidence therefore did not qualify for admission under the prior testimony exception to the hearsay rule.

---

[8] The defendant argued that the victim's statements on the day of the competency hearing were inconsistent with her statements supporting her allegation of sexual abuse related to the jury through the witnesses that testified at trial.

The defendant next argues that the court should have admitted the statements into evidence under the exception to the hearsay rule for prior inconsistent statements. The admissibility of a prior inconsistent statement depends on the satisfaction of the following four requirements: (1) the statement must be in writing, (2) the statement must be signed by the declarant, (3) the declarant must possess personal knowledge of the facts contained therein, and (4) the declarant must testify at trial and be subject to cross-examination. Conn. Code Evid. § 8-5 (1); *State* v. *Whelan*, 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986).

The court properly refused to admit the statements under the exception to the hearsay rule for prior inconsistent statements. The victim did not actually testify at trial; she answered questions during a hearing wherein the court concluded that she was not a competent witness. She was not subject to cross-examination. As the court explained, during the competency hearing "the witness consistently expressed in a variety of ways her unwillingness to discuss the subject matter . . . her recharacterization of what she drew was consistent with her prior behavior here in this courthouse and merely reflective of her unwillingness or inability to discuss the subject matter of this case." Obviously, the court, having witnessed the victim's demeanor and testimony firsthand, was in a far superior position from which to evaluate the reliability of the victim's statements than is this court, which can review only the printed record of the victim's appearance before the trial court. Accordingly, we afford the court's observations and opinion a great deal of deference.

The defendant also argues that the evidence should have been admitted under the residual exception to the hearsay rule. "The residual, or catch-all, exception to the hearsay rule allows a trial court to admit hearsay

evidence not admissible under any of the established exceptions if: (1) there is a reasonable necessity for the admission of the statement, and (2) the statement is supported by the equivalent guarantees of reliability and trustworthiness essential to other evidence admitted under the traditional hearsay exceptions." (Internal quotation marks omitted.) *State* v. *Lewis*, 245 Conn. 779, 805, 717 A.2d 1140 (1998).

Our review of the record supports the court's assessment of the victim's testimony and demeanor on the day of the competency hearing. As the court aptly noted, the victim, for whatever reason, was unwilling to participate in a dialogue with either of the attorneys who addressed her, did not remain focused on the questions asked of her and would not speak seriously in regard to the allegations she made against the defendant. Given those facts, it was logical for the court to conclude that the victim's testimony and statements made on the day of the hearing were "not imbued with guarantees of reliability and trustworthiness sufficient to support [their] admission." *State* v. *Outlaw*, 216 Conn. 492, 499, 582 A.2d 751 (1990). Accordingly, we conclude that the court did not abuse its broad discretion when it refused to admit the evidence under the residual exception to the hearsay rule.

The judgment is affirmed.

In this opinion the other judges concurred.