STATE OF CONNECTICUT *v.* BERNALE BRYANT
(AC 21652)

Flynn, Bishop and McDonald, Js.

Argued May 29—officially released August 6, 2002

*Donald D. Dakers*, special public defender, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *David Zagaja*, assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. The defendant, Bernale Bryant, who had been charged with murder and was acquitted of that crime, appeals from the judgment of conviction, rendered after a jury trial, of the lesser offense of intentional manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1).[1]

On appeal, the defendant claims that (1) the introduction, at trial, of a transcript of the testimony of a witness, Ewan Sharp, at a probable cause hearing violated his constitutional right of confrontation in that he was

---

[1] General Statutes § 53a-55 (a) provides in relevant part: "A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person . . . ."

unable to cross-examine Sharp as to the benefits he received for his testimony, and (2) the trial court violated his constitutional right to present a defense when it prohibited him from presenting extrinsic evidence at trial as to the benefits received by Sharp for his testimony at the probable cause hearing. We affirm the judgment of the trial court.

The jury reasonably could have found that on April 14, 1996, the defendant repeatedly and seriously injured Edward Jones, and those injuries caused Jones' death. The following testimony is relevant to our resolution of this appeal.

After drinking beer and using narcotics together, in the early morning hours of April 14, 1996, Gary Fournier and the victim, Edward Jones, drove to Irving Street and Albany Avenue in Hartford to get more narcotics. The pair planned to obtain the narcotics and drive off without paying for them. Fournier stopped his car and was approached by Terry "T-Time" Davis, a known drug seller. Shortly thereafter, the defendant approached the car and handed Fournier some cocaine.

As soon as Fournier had the cocaine in hand, he drove off without paying for the contraband. The defendant continued to hang onto the car as Fournier drove off. The defendant released his hold of the car just as it ran through a stop sign and was struck by another automobile. The defendant then went to Fournier's car, dragged Fournier from the car, pushed him to the ground and kicked him several times before running to the passenger's side of the car. The defendant dragged Jones through the passenger window, and hit and kicked him repeatedly while he lay on the street. The defendant then ran from the scene.

There was other evidence that the defendant had given a statement to the police that he was dragged by

Fournier's car toward the intersection and the defendant so testified at the trial.

After the accident, a Hartford police officer, Garth Perri, arrived at the scene of the collision. Officer Perri accompanied Jones to a hospital, where he was pronounced dead.

On December 17, 1999, Sharp was arrested by the Hartford police department for robbery. While being questioned by members of the department, Sharp informed them that he had witnessed the April 14, 1996 collision and saw the defendant repeatedly beating Jones. On January 25, 2000, Sharp gave a written statement to the Hartford police concerning those events. Shortly thereafter, the defendant was arrested for the murder of Jones. On March 30, 2000, Sharp testified at the defendant's probable cause hearing. On direct examination, Sharp testified that he had been incarcerated since 1999 because of a charge of robbery and admitted to having four prior criminal convictions, at least one of which was a felony. He was also examined as to the pending robbery charge and denied that it influenced his testimony.

Complete transactional immunity was extended to Sharp at the defendant's subsequent trial. However, when called as a witness at trial, Sharp refused to testify, initially claiming a fifth amendment privilege against self-incrimination. After determining that Sharp's fifth amendment privilege would not be implicated, the trial court ordered him to testify. Sharp continued to refuse and was found in contempt by the trial court and sentenced to six months imprisonment. The trial court subsequently determined that, because of his refusal to testify, Sharp was unavailable and allowed portions of his probable cause hearing testimony to be read to the jury. The state and the defendant then stipulated that subsequent to the probable cause hearing and before

the trial, Sharp had been sentenced to probation after he pleaded guilty to charges of larceny in the second degree and failure to appear.

## I

The defendant first claims that the trial court improperly admitted into evidence Sharp's testimony from the probable cause hearing in violation of the defendant's federal and state constitutional right of confrontation. The admissibility of this evidence hinges upon the defendant's opportunity to cross-examine Sharp at the prior hearing to ensure the defendant's right of confrontation. Concluding, in this case, that the defendant had a sufficient opportunity to cross-examine Sharp at the probable cause hearing, we disagree with the defendant's claim.

In *Ohio* v. *Roberts*, 448 U.S. 56, 66, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980), the United States Supreme Court announced a two part test for determining whether former testimony may be admitted without infringing on a criminal defendant's right of confrontation. "That test requires (1) demonstration that the witness is unavailable to testify at trial, and (2) adequate indicia of reliability of the previous testimony." (Internal quotation marks omitted.) *State* v. *Munoz*, 233 Conn. 106, 148, 659 A.2d 683 (1995) (*Berdon, J.*, concurring); see also *State* v. *Torres*, 60 Conn. App. 562, 574, 761 A.2d 766 (2000), cert. denied, 255 Conn. 925, 767 A.2d 100 (2001), citing *State* v. *Williams*, 231 Conn. 235, 248, 645 A.2d 999 (1994).

In this case, neither party disputes the unavailability of Sharp at the time of trial. Rather, the parties disagree about whether Sharp's testimony at the probable cause hearing bore adequate indicia of reliability. More specifically, the defendant argues that Sharp's testimony was not reliable because he did not have an adequate opportunity to cross-examine Sharp concerning any benefits

he received in exchange for testifying at the probable cause hearing.

"Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. . . . Prior testimony [at a pretrial hearing] is a well rooted exception to the hearsay rule." (Citations omitted; internal quotation marks omitted.) *State* v. *Atkins,* 57 Conn. App. 248, 254, 748 A.2d 343, cert. denied, 253 Conn. 916, 754 A.2d 164 (2000), citing *State* v. *Malone,* 40 Conn. App. 470, 479, 671 A.2d 1321, cert. denied, 237 Conn. 904, 674 A.2d 1332 (1996); see *Ohio* v. *Roberts,* supra, 448 U.S. 72–73. Furthermore, "testimony given at a probable cause hearing has the identical safeguards to insure reliability and trustworthiness as the testimony given at the trial." *State* v. *Parker,* 161 Conn. 500, 503, 289 A.2d 894 (1971); see also *Ohio* v. *Roberts,* supra, 73; *State* v. *Atkins,* supra, 254.

The record demonstrates that the defendant had the opportunity to cross-examine Sharp during the probable cause hearing, and did, in fact, do so. The right to confrontation "demands that where prior testimony is admitted at a later proceeding, the party against whom the testimony is admitted must have had an opportunity to cross-examine the witness at the earlier proceeding sufficient to endow the testimony as a whole with some indicia of reliability . . . ." (Internal quotation marks omitted.) *State* v. *Joyner,* 255 Conn. 477, 491 n.19, 774 A.2d 927 (2001), quoting *United States* v. *Ciak,* 102 F.3d 38, 43 (2d Cir. 1996). The proper test is that the party must have been given the opportunity for full and complete cross-examination in the prior proceeding as opposed to actually making full use of that opportunity. See *State* v. *Joyner,* supra, 491 n.19; *State* v. *Parker,* supra, 161 Conn. 504.

We conclude that the testimony at the probable cause hearing bore adequate indicia of reliability, and it was

within the trial court's discretion, especially in light of the absence of any restrictions on cross-examination at the probable cause hearing, to determine that Sharp's testimony at that hearing was reliable. Accordingly, we find that the trial court's admission of Sharp's probable cause hearing testimony presents no clear violation of the defendant's right of confrontation under either the state or federal constitution.

## II

The defendant next claims that the trial court violated his constitutional right to present a defense when it prohibited him from presenting extrinsic evidence at trial as to the benefits received by Sharp for his testimony following the probable cause hearing in the form of a reduction of his $85,000 cash bond to a promise to appear without cash collateral or surety. The defendant's opportunity to elicit evidence of bias or motive, beyond that necessitated by the constitution, rests within the discretion of the trial court. See *State* v. *Valentine*, 255 Conn. 61, 70–71, 762 A.2d 1278 (2000). The defendant argues that the jury should have also been informed that Sharp was released from incarceration on a promise to appear after the probable cause hearing and before the disposition of his robbery case. While we agree that this evidence should not have been excluded, we conclude that its exclusion was not harmful.

"Impeachment of a witness for bias is a matter of right. This attack on credibility may be accomplished by cross-examination or by the introduction of extrinsic evidence. McCormick, Evidence (2d Ed.) p. 81." *State* v. *Shipman*, 195 Conn. 160, 163, 486 A.2d 1130 (1985); see C. McCormick, Evidence (5th Ed. 1999) § 33, p. 124. "Impeachment of a witness for motive, bias and interest may also be accomplished by the introduction of extrinsic evidence. . . . The same rule that applies to the

right to cross-examine applies with respect to extrinsic evidence to show motive, bias and interest . . . . *State* v. *Colton*, 227 Conn. 231, 249, 630 A.2d 577 (1993), on appeal after remand, 234 Conn. 683, 663 A.2d 339 (1995), cert. denied, 516 U.S. 1140, 116 S. Ct. 972, 133 L. Ed. 2d 892 (1996)." (Internal quotation marks omitted.) *State* v. *Ferguson*, 260 Conn. 339, 350–51, 796 A.2d 1118 (2002).

When the right to cross-examine for this purpose is not denied altogether, the scope of the examination rests in the court's discretion. See *State* v. *Lewis*, 220 Conn. 602, 622, 600 A.2d 1330 (1991); *State* v. *Luzzi*, 147 Conn. 40, 47, 156 A.2d 505 (1959). "This same rule applies with respect to the introduction of extrinsic evidence to show bias; that is, proof of the main facts is a matter of right but the extent of the proof of details lies in the court's discretion. See 3A Wigmore, Evidence (Chadbourn Rev.) § 951, p. 797 n.2." *State* v. *Shipman*, supra, 195 Conn. 163; see also *State* v. *Ferguson*, supra, 260 Conn. 350–51.

At the probable cause hearing, Sharp testified that he was fourteen years old on April 14, 1996. He testified that he was presently incarcerated and that he had been incarcerated for the last four months on a robbery charge. He also stated under oath that his testimony was not at all influenced by his pending case. In addition, he testified that he had been convicted of a felony, possession of a weapon in a motor vehicle, and that he had three other convictions for narcotics offenses. He stated that he smoked marijuana on April 14, 1996, and that he smoked marijuana every day.[2] This testimony was read to the jury at the defendant's trial. Additionally, the parties entered a written stipulation into evidence to the effect that Sharp had been granted immunity by the state from any criminal conduct to

[2] Sharp also testified about the car crash and what happened subsequent to that crash.

which he referred during his probable cause hearing testimony. The stipulation also stated that Sharp was sentenced to probation after the probable cause hearing and before the trial on charges of larceny and failure to appear.

The defendant then sought to introduce extrinsic evidence of Sharp's release from custody when his bond on the robbery charge was lowered from $85,000 cash to a promise to appear shortly after he testified at the probable cause hearing. The trial court excluded such evidence, ruling that it was inadmissible because it occurred subsequent to the probable cause hearing. The trial court, however, remarked that the defendant could call the state's attorneys prosecuting Sharp to elicit from them whether the state had made this offer, regarding bond, to Sharp prior to his testimony. Stating that he had no such evidence, the defense attorney did not call those state's attorneys.

At the probable cause hearing, Sharp denied that his testimony was influenced by the charges pending against him. When Sharp's prior testimony was offered at trial, the defendant was not obliged to simply accept that answer; rather, he should have been allowed the opportunity to attempt to contradict Sharp by the submission of other proof. See State v. Shipman, supra, 195 Conn. 163; Atwood v. Welton, 7 Conn. 66, 70 (1828). The lowering of Sharp's bond and his release on a promise to appear may have lent some support to the defendant's contention that Sharp testified at the probable cause hearing in expectation of a benefit from the state. That evidence should have been allowed. Nevertheless, because the court admitted plenty of other evidence concerning Sharp's favorable treatment by the state, which the jury heard, there is no clear showing of prejudice. The jury did hear the most telling piece of evidence available concerning Sharp's favorable treatment, namely, that he had received a sentence of probation,

on reduced charges, despite four prior criminal convictions and that he received this favorable sentence after testifying at the probable cause hearing.

The defendant argues that the court's ruling as to Sharp's release from custody before receiving probation was prejudicial because it showed that the state treated him favorably after he testified. However, Sharp's sentence of probation would also result in his release from custody, as well as the avoidance of substantial incarceration if convicted of robbery as a repeated felon.

Additionally, the jury did hear plenty of other evidence for impeachment purposes, i.e., Sharp's prior arrests, the state's favoring him with a grant of immunity and his daily use of marijuana. Moreover, because of the other evidence presented at the trial—Fournier's testimony that the defendant beat him and Jones after the car accident, and the defendant's admission to the police and his trial testimony that he was "dragged along" by Fournier's vehicle before the collision—we conclude that the trial court's ruling with respect to Sharp's release on a promise to appear was not prejudicial. Consequently, any error was harmless. See *State* v. *Shipman*, supra, 195 Conn. 163–64. Accordingly, we hold that the court's ruling as to Sharp's release from bond does not require a new trial.

The judgment is affirmed.

In this opinion the other judges concurred.