STATE OF CONNECTICUT *v.* MICHAEL J. MARSALA
(AC 25509)

Schaller, Harper and Hennessy, Js.

---

Argued October 21, 2005—officially released February 7, 2006

*Jodi Zils Gagne,* for the appellant (defendant).

*Susann E. Gill,* senior assistant state's attorney, with whom, on the brief, were *Mary M. Galvin,* state's attorney, *L. Mark Hurley,* supervisory assistant state's attorney, and *Adam E. Mattei,* certified legal intern, for the appellee (state).

*Opinion*

HENNESSY, J. The defendant, Michael J. Marsala, appeals from the judgment of conviction, rendered after a jury trial, of four counts of harassment in the second degree in violation of General Statutes § 53a-183 (a) (3). On appeal, the defendant claims that (1) his conviction on four counts of harassment in the second degree violated his constitutional protection against double jeopardy because the four counts arose from the same act and (2) the trial court, in violation of his constitutional right to confront his accuser, improperly precluded him from eliciting the specific names of the twelve previous felonies his accuser was convicted of and precluded him from introducing documents verifying that she was convicted of them. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant and the victim, Kerrie Patavino, had known each other for more than eighteen years. On May 5, 2003, the defendant called Patavino five times

and left five messages on her telephone answering machine all within a fifteen minute period. All five messages were either profane in nature, referenced their past sexual relationship, referred to Patavino as a sexual molester or compared Patavino to a deceased woman whom the defendant claimed to have murdered. Later that day, Patavino listened to all five of the messages consecutively. Patavino saved the audiotape containing the messages.

Seven days after listening to the messages, Patavino brought the tape to the West Haven police department and filed a complaint. After listening to the tape and interviewing Patavino, Officer Kaitlyn Flavin applied for an arrest warrant. The defendant was arrested and, on May 22, 2003, was charged with one count of harassment in the second degree in violation of § 53a-183. On November 14, 2003, the state amended the original information and added three additional counts of harassment in the second degree. The defendant pleaded not guilty and elected to have a trial by jury.

By way of a motion to dismiss and later a motion for a judgment of acquittal, the defendant argued that the three additional counts of harassment constituted an impermissible multiplicity of counts and violated his constitutional protection against double jeopardy because all four counts arose from the same act. The court denied both motions.

Prior to the start of trial, the state filed a motion in limine relating to Patavino's prior criminal history. The state conceded that the defendant was permitted to offer evidence that Patavino previously had been convicted of twelve felonies, but argued that the nature and circumstances of the convictions should be excluded. The court granted the motion and ruled that

the defendant would be precluded from introducing the specific nature and circumstances of the felonies.[1]

---

[1] During trial, defense counsel elicited the following relevant testimony from Patavino on cross-examination:

"[Defense Counsel]: All right. Now, are you then the same Kerrie Patavino who on the eleventh day of October, 1996, in the judicial district of Fairfield at Bridgeport was convicted of a felony?

"[The Witness]: Yes, sir. That would be me.

"[Defense Counsel]: And on the same date, October 11, 1996, in the same court, are you the same Kerrie Patavino who was convicted of a second felony?

"[The Witness]: I went to trial once and I—

"[Defense Counsel]: I asked—

"The Court: Ma'am, just listen to the question. Answer the question if you can.

"[The Witness]: And my answer is maybe. . . .

"[Defense Counsel]: Do you deny that on the eleventh day of October, 1996, in the judicial district of Fairfield at Bridgeport that you are the Kerrie Patavino who was convicted of a separate and distinct felony than the one you just testified first off? . . .

"[Defense Counsel]: Do you deny that, that you were convicted in that same court—

"[The Witness]: No, I don't deny it. My answer was maybe, so I'm not denying it.

\* \* \*

"[Defense Counsel]: Ms. Patavino, you've testified earlier regarding one conviction of a felony on the day in question. Do you recall that before we had a little recess there?

"[The Witness]: Yes. . . .

"[Defense Counsel]: My next question is on October 11, 1996, in the same court, the judicial district of Fairfield at Bridgeport, are you the same Kerrie Patavino who was convicted of a third felony offense?

"[The Witness]: I'm not denying. Maybe.

"[Defense Counsel]: Maybe? And on the same date, October 11, 1996, and in the same court, are you the same Kerrie Patavino who was convicted of a fourth felony offense?

"[The Witness]: Not denying. Maybe.

"[Defense Counsel]: And on the same date, October 11, 1996, and in the same court, are you the same Kerrie Patavino who was convicted of a fifth felony?

"[The Witness]: Not denying. Maybe.

"[Defense Counsel]: And on the same date, October 11, 1996, and in the same court, are you the same Kerrie Patavino who was convicted of a sixth felony?

"[The Witness]: Not denying. Maybe. . . .

"[Defense Counsel]: And on the same date, October 11, 1996, and in the same court, are you the same Kerrie Patavino who convicted of seventh felony?

Throughout the cross-examination of Patavino, the defendant attempted to introduce a certified criminal record as a full exhibit. The state objected. The defendant argued outside the presence of the jury that the record was admissible to impeach Patavino because she did not acknowledge her twelve prior felony convictions. The objection was sustained. The defendant was ultimately convicted and sentenced on all four counts of harassment in the second degree. This appeal followed.

I

We first address the defendant's double jeopardy claim. The determination of whether the defendant's constitutional right to be free of double jeopardy was violated is a question of law. As such, our review is plenary. See *State* v. *Butler*, 262 Conn. 167, 174, 810 A.2d 791 (2002). The factual findings of the court that determines that issue, however, will stand unless they are clearly erroneous. *State* v. *Tuchman*, 242 Conn. 345, 351, 699 A.2d 952 (1997), cert. dismissed, 522 U.S. 1101, 118 S. Ct. 907, 139 L. Ed. 2d 922 (1998).

"The double jeopardy clause of the fifth amendment to the United States constitution provides: [N]or shall

"[The Witness]: Not denying. Maybe.

"[Defense Counsel]: And on the same date, October 11, 1996, and in the same court, are you the same Kerrie Patavino who was convicted of an eighth felony?

"[The Witness]: It's quite possible, and I'm not denying it. . . .

"[Defense Counsel]: And on the same date, October 11, 1996, and in the same court, are you the same Kerrie Patavino who was convicted of a ninth felony?

"[The Witness]: I was convicted on that date of twelve counts for one event that had occurred.

"[Defense Counsel]: And were each of those twelve counts felonies, Ms. Patavino?

"[The Witness]: I don't think they all were.

* * *

"[Defense Counsel]: So, in summation, Ms. Patavino, on October 11, 1996, in the judicial district of Fairfield at Bridgeport, are you the same Kerrie Patavino who was convicted of twelve felonies?

"[The Witness]: I think so. I don't know that they were all felonies, but I think so."

any person be subject for the same offense to be twice put in jeopardy of life or limb . . . . This constitutional provision is applicable to the states through the due process clause of the fourteenth amendment. . . . This constitutional guarantee serves three separate functions: (1) It protects against a second prosecution for the same offense after acquittal. [2] It protects against a second prosecution for the same offense after conviction. [3] And it protects against multiple punishments for the same offense [in a single trial]." (Citations omitted; internal quotation marks omitted.) *State* v. *Ferguson*, 260 Conn. 339, 360–61, 796 A.2d 1118 (2002). The defendant's claim implicates the last of those three functions. Specifically, he argues that his conviction on four counts of harassment in the second degree violated his constitutional protection against double jeopardy because the four counts arose from the same act.

"The proper double jeopardy inquiry when a defendant is convicted of multiple violations of the *same* statutory provision is whether the legislature intended to punish the individual acts separately or to punish only the course of action which they constitute." (Emphasis in original; internal quotation marks omitted.) *State* v. *Freeney*, 228 Conn. 582, 587, 637 A.2d 1088 (1994). "The issue, though essentially constitutional, becomes one of statutory construction." *State* v. *Rawls*, 198 Conn. 111, 120, 502 A.2d 374 (1985). "In construing any statute, we seek to ascertain and give effect to the apparent intent of the legislature." *United Illuminating Co.* v. *Groppo*, 220 Conn. 749, 755, 601 A.2d 1005 (1992). "In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *State* v. *Payne*, 240 Conn.

766, 771, 695 A.2d 525 (1997), overruled in part on other grounds, *State* v. *Romero,* 269 Conn. 481, 490, 849 A.2d 760 (2004).

We therefore turn to the language of the statute. Section 53a-183 (a) provides in relevant part: "A person is guilty of harassment in the second degree when . . . (3) with intent to harass, annoy or alarm another person, he makes a telephone call, whether or not a conversation ensues, in a manner likely to cause annoyance or alarm." The defendant argues that the four telephone calls constitute one act because the victim listened to them consecutively and, therefore, she could have been harassed, annoyed or alarmed only once. It is clear from the language of the statute that this argument is without merit. Specifically, the phrase "a telephone call," coupled with the phrase, "likely to cause annoyance," shows that the legislature intended to punish each telephone call made with the requisite intent to harass, annoy or alarm regardless of the number of times, if any, the victim was actually harassed, annoyed or alarmed. That is because the phrase "likely to cause annoyance or alarm" shows that the effect on the listener is not relevant. Instead, the statute is concerned with the conduct of the individual making the telephone call. Additionally, the phrase "a telephone call" shows the legislature's intent to punish for a single telephone call. Therefore, an individual violates § 53a-183 (a) (3) each time the individual makes a telephone call with the intent to harass, alarm and annoy the victim in a manner likely to cause annoyance or alarm regardless of the number of times the victim actually became alarmed or annoyed, if any, and regardless of how close in time the calls were made or whether the victim was actually harassed, annoyed or alarmed.

Here, the jury found that the defendant made four telephone calls with the intent to harass, alarm and annoy Patavino in a manner likely to cause annoyance

or alarm. The defendant's conviction of four counts of harassment in the second degree in violation § 53a-183 (a) (3) and their accompanying sentences is, therefore, consistent with the legislative intent to punish for each single telephone call made with the intent to harass, alarm or annoy in a manner likely to alarm or annoy. Accordingly, the defendant has not succeeded in establishing a double jeopardy violation.

## II

We next turn to the defendant's confrontation clause claim. The defendant concedes that his original objection was on nonconstitutional grounds. On appeal, the defendant claims, for the first time, that precluding him from eliciting the specific names of the twelve previous felonies Patavino was convicted of and precluding him from introducing documents verifying that she was convicted of them violated his constitutional right to confront his accuser.

"When a party raises a claim for the first time on appeal, our review of the claim is limited to review under either the plain error doctrine as provided by Practice Book § 60-5, or the doctrine set forth in *State v. Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989)." *State v. Rodriguez*, 68 Conn. App. 303, 308, 791 A.2d 621, cert. denied, 260 Conn. 920, 797 A.2d 518 (2002). In the present case, the defendant has not requested plain error or *Golding* review of his unpreserved confrontation cause claim. "This court often has noted that it is not appropriate to engage in a level of review that is not requested. . . . When the parties have neither briefed nor argued plain error [or *Golding* review], we will not afford such review." (Citation omitted; internal quotation marks omitted.) *Dockter v. Slowik*, 91 Conn. App. 448, 463, 881 A.2d 479, cert. denied, 276 Conn. 919,

888 A.2d 87 (2005). We therefore decline to review the defendant's unpreserved confrontation clause claim.[2]

We will, however, review the defendant's original evidentiary claim, which was preserved at trial and intertwined in his confrontation clause analysis. "Our standard of review for evidentiary matters allows the trial court great leeway in deciding the admissibility of evidence. The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done. . . . The exercise of such discretion is not to be disturbed unless it has been abused or the error is clear and involves a misconception of the law. . . . Sound discretion, by definition, means a discretion that is not exercised arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law . . . . And [it] requires a knowledge and understanding of the material circumstances surrounding the matter . . . . In our review of these discretionary determinations, we make every reasonable presumption in favor of upholding the trial court's ruling." (Citation omitted; internal quotation marks omitted.) *State* v. *Ciccio*, 77 Conn. App. 368, 382, 823 A.2d 1233, cert. denied, 265 Conn. 905, 831 A.2d 251 (2003).

There is nothing in the record that indicates that the court abused its discretion in excluding Patavino's certified criminal record and the specific names of the felonies of which she had been convicted. The defen-

---

[2] Moreover, the defendant's claim is evidentiary and not constitutional. See *State* v. *Perez*, 87 Conn. App. 113, 121, 864 A.2d 52 (2005) ("admission of prior felony convictions for credibility purposes is an evidentiary matter, not a constitutional one"). "Putting a constitutional tag on a nonconstitutional claim will no more change its essential character than calling a bull a cow will change its gender." *State* v. *Gooch*, 186 Conn. 17, 18, 438 A.2d 867 (1982). Therefore, even if we were to review the defendant's claim under *Golding*, it would fail because it is not of constitutional magnitude. See *State* v. *Golding*, supra, 213 Conn. 239.

dant was permitted to question Patavino about all twelve of her felony convictions. Although she did not immediately acknowledge all twelve, she eventually testified that she was convicted of twelve crimes and that she believed they were all felonies. As a result, the jury was aware, at the very least, that she was convicted of multiple felonies, if not all twelve. In addition, eleven out of the twelve convictions did not reflect directly on Patavino's veracity. We therefore conclude that the court properly exercised its discretion in precluding Patavino's certified criminal record and the specific names of the twelve felonies of which she had been convicted.

The judgment is affirmed.

In this opinion the other judges concurred.