## JERMAINE WOODS *v.* COMMISSIONER OF CORRECTION
### (AC 24244)

Foti, West and DiPentima, Js.

Argued February 19—officially released October 12, 2004

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's

attorney, and *Cara F. Eschuk*, senior assistant state's attorney, for the appellant (respondent).

*Joseph Visone*, special public defender, for the appellee (petitioner).

WEST, J. The respondent commissioner of correction, on the granting of his petition for certification, appeals from the judgment of the habeas court granting the petition for a writ of habeas corpus filed by the petitioner, Jermaine Woods. The court based its decision on the petitioner's claim of ineffective assistance of counsel.[1] The respondent claims on appeal that the court improperly determined that counsel rendered ineffective legal assistance to the petitioner such that the petitioner suffered prejudice. We affirm the judgment of the habeas court.

In the underlying criminal matter, the petitioner was found guilty of murder in violation of General Statutes § 53a-54a after a trial by jury. He was sentenced to the custody of the respondent for fifty years. In the petitioner's direct appeal to the Supreme Court, the judgment of conviction was affirmed. See *State* v. *Woods*, 250 Conn. 807, 740 A.2d 371 (1999).

In its opinion, the Supreme Court set forth the following relevant factual background: "The jury reasonably could have found the following facts. In the early morning hours of November 5, 1994, the [petitioner] and the victim, Jahmal Hall, began arguing in the vicinity of North Main and East Farm Streets in Waterbury. Domingo Alves, a close family friend of Hall, placed himself between Hall and the [petitioner]. Alves put his hands out, one toward Hall and one toward the

---

[1] The petition was brought on two grounds, ineffective assistance of counsel and actual innocence. The court granted the petition as to the ineffective assistance claim, but rejected the claim of actual innocence.

[petitioner], in an effort to separate them. Hall stood calmly, but the [petitioner] kept pushing against Alves, trying to reach Hall. Alves then lightly put both his hands on the [petitioner's] chest to stop him from advancing. The [petitioner] removed a gun from his pocket. When Alves saw the gun, he took a step back from the [petitioner]. Hall stood still and appeared to be frightened. The [petitioner] shot Hall once in the torso, then ran to his car. While driving away, the [petitioner] told his cousin, James Bryan, who was waiting in the car, 'I told him stop messing with me.' Jahmal Hall later died from the gunshot wound." Id., 809.

Following an unsuccessful direct appeal, the petitioner brought his petition for a writ of habeas corpus. In an April 3, 2003 memorandum of decision, the court granted his second amended petition, determining that counsel had been ineffective and that the petitioner was entitled to a new trial. The respondent appeals.

The respondent claims that the court improperly determined that counsel rendered ineffective legal assistance to the petitioner, thereby causing the petitioner prejudice. The respondent argues that the petitioner was adamant in his position that he did not volitionally pull the trigger in the shooting at issue and, therefore, a defense of diminished capacity and mistake of fact would not have been consistent with the trial testimony of the petitioner and the primary defense of accidental or involuntary discharge of the weapon. Additionally, the respondent argues that defense counsel, herself, did not believe that a diminished capacity defense was truly viable, but that she, admittedly, was "grasping at straws," trying to be "creative."[2]

[2] Counsel testified at the habeas proceeding as follows: "We proffered a lot of defenses, [and diminished capacity] was one of them. I don't believe it was a self-defense issue, either. I don't believe there was involuntariness. But I argued those to the jury. I don't believe that he's so dumb that he can't understand intent, but I argued that to the jury." Counsel, however, also testified that she believed the petitioner was "slow," that the term "slow" was the equiv-

In addition to that line of argument, the respondent also stresses that counsel put forth "lay evidence and scholastic test results to demonstrate that the petitioner's mental capacity was diminished." That lay evidence was introduced, the respondent argues, because "the secondary defense of diminished capacity was not conceived until shortly before the end of the state's portion of the petitioner's second trial [after the first trial ended in a mistrial] . . . and [counsel was] aware that any effort to have the petitioner examined by a psychiatrist at such a late date would have been fruitless."[3]

In response, the petitioner states that although "[t]he respondent . . . argues that trial counsel did the best she could given the fact that the time for notification of the intent to call an expert witness on the issue of mental disease or defect had passed. . . . Clearly, [Practice Book § 40-18[4]] gives the trial court wide lati-

alent of the term "diminished capacity" and that those terms were interchangeable.

[3] The respondent also argues that the court incorrectly relied on *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 662 A.2d 718 (1995) (petitioner received ineffective assistance of counsel at time of guilty plea where counsel was inexperienced and failed to investigate potential defenses of mental incapacity and extreme emotional disturbance), without recognizing important distinctions between *Copas* and the present case. A careful review of the record, however, reveals that not only did the court discuss the similarities and differences of the *Copas* case during the habeas proceeding, but also, it is readily apparent that the court mindfully went through the distinctions and similarities of *Copas* and the present case in its memorandum of decision.

[4] Practice Book § 40-18 provides: "If a defendant intends to introduce expert testimony relating to the affirmative defenses of mental disease or defect, or of extreme emotional disturbance or another condition bearing upon the issue of whether he or she had the mental state required for the offense charged, the defendant shall, not later than forty-five days after the first pretrial conference in the court where the case will be tried or at such later time as the judicial authority may direct, notify the prosecuting authority in writing of such intention and file a copy of such notice with the clerk. The defendant shall also furnish the prosecuting authority with copies of reports of physical or mental examinations of the defendant prepared by an expert whom the defendant intends to call as a witness in connection with the offense charged, within five days after receipt thereof. The judicial authority may for cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other order as may be appropriate."

tude to fashion an appropriate remedy . . . [and counsel's] habeas testimony that she did not ask for additional time to have the petitioner evaluated because she did not believe that the court would grant such a motion [or] that she didn't have him examined because this was her [supervisor's] . . . file, and she thought that he would be sitting in the courtroom while she was trying the case and she did not want to show him up" was, as the court responded, "not a good enough reason not to have the petitioner examined."

We agree that on the basis of the evidence presented at the habeas proceeding, defense counsel should have produced sufficient evidence to support the defense of diminished capacity. In particular, we note that counsel testified that she believed that the petitioner was "slow," which she equated with diminished capacity. We further conclude that in light of her stated reasons for failing to seek a continuance to have the petitioner evaluated, that failure constituted ineffective assistance of counsel. Accordingly, we affirm the judgment of the habeas court.

We begin our discussion by setting forth our standard of review as well as presenting an overview of relevant habeas corpus law. "Our standard of review in a habeas corpus proceeding challenging the effective assistance of trial counsel is well settled. Although a habeas court's findings of fact are reviewed under the clearly erroneous standard of review . . . [w]hether the representation a [petitioner] received at trial was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Citation omitted; internal quotation marks omitted.) *Alvarez* v. *Commissioner of Correction*, 79 Conn. App. 847, 848, 832 A.2d 102, cert. denied, 266 Conn. 933, 837 A.2d 804 (2003).

A petitioner's right to the effective assistance of counsel is guaranteed by the sixth and fourteenth amendments to the United States constitution, and by article first, § 8, of the Connecticut constitution. "The right to counsel is the right to the effective assistance of counsel. . . . This right is equally applicable whether defense counsel is court-appointed . . . or . . . privately-retained counsel. . . . The right to counsel, however, is the right to effective assistance and not the right to perfect representation." (Citation omitted; internal quotation marks omitted.) *Siano* v. *Warden*, 31 Conn. App. 94, 96–97, 623 A.2d 1035, cert. denied, 226 Conn. 910, 628 A.2d 984 (1993).

"In *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction. . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." (Internal quotation marks omitted.) *Toccaline* v. *Commissioner of Correction*, 80 Conn. App. 792, 798, 837 A.2d 849, cert. denied, 268 Conn. 907, 845 A.2d 413, cert. denied sub nom. *Toccaline* v. *Lantz*, 543 U.S. 854, 125 S. Ct. 301, 160 L. Ed. 2d 90 (2004).

In properly assessing the deficiency component of the *Strickland* test, the court must be mindful that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court

must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. " (Internal quotation marks omitted.) *Henderson* v. *Commissioner of Correction*, 80 Conn. App. 499, 504, 835 A.2d 1036 (2003), cert. denied, 267 Conn. 918, 841 A.2d 1190 (2004).

Turning to the prejudice component of the *Strickland* test, "[i]t is not enough for the [petitioner] to show that the errors [made by counsel] had some conceivable effect on the outcome of the proceeding. . . . Rather, [the petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." (Citations omitted; internal quotation marks omitted.) *Fair* v. *Warden*, 211 Conn. 398, 408, 559 A.2d 1094, cert. denied, 493 U.S. 981, 110 S. Ct. 512, 107 L. Ed. 2d 514 (1989). A court "hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. . . . [A] court making the prejudice inquiry must ask if the [petitioner] has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Strickland* v. *Washington*, supra, 466 U.S. 695–96.

In its memorandum of decision, the court made the following relevant factual findings, which are not challenged on appeal: "The [petitioner's] first trial ended in a hung jury and was declared a mistrial. The second trial commenced on January 9, 1997. [Defense counsel] . . . then a member of the public defender's office . . . represented the petitioner at each trial. Although attor-

ney Alan McWhirter, the director of public defender services in Waterbury, was involved in the first trial, he was not involved in the second trial. Prior to the commencement of the second trial, attorney Louis Avitabile . . . was asked to represent the petitioner by the petitioner's family, but they were unable to pay his retainer. However, Avitabile advised [defense counsel] during the trial. Following the commencement of jury selection, Avitabile met with the petitioner. According to Avitabile, this meeting took place on the Sunday before Martin Luther King's birthday (January 19, 1997). Avitabile had already learned that the petitioner may have had some organic brain damage . . . . Avitabile advised [defense counsel] that in addition to the self-defense defense, they should have a defense of diminished capacity under General Statutes § 53a-13.[5] This was based not only upon the information Avitabile had as to possible organic brain damage, which was later confirmed by Dr. John Felber, the psychiatrist presented at the habeas trial by the petitioner, but also after interviewing the petitioner. Avitabile advised [defense counsel] that they should advance a defense of diminished capacity. In fact, evidence of diminished capacity was introduced in the trial."

The court, in its memorandum of decision, specifically discussed Avitabile's response to the question of

---

[5] General Statutes § 53a-13 provides: "(a) In any prosecution for an offense, it shall be an affirmative defense that the defendant, at the time he committed the proscribed act or acts, lacked substantial capacity, as a result of mental disease or defect, either to appreciate the wrongfulness of his conduct or to control his conduct within the requirements of the law.

"(b) It shall not be a defense under this section if such mental disease or defect was proximately caused by the voluntary ingestion, inhalation or injection of intoxicating liquor or any drug or substance, or any combination thereof, unless such drug was prescribed for the defendant by a prescribing practitioner, as defined in subdivision (22) of section 20-571, and was used in accordance with the directions of such prescription.

"(c) As used in this section, the terms mental disease or defect do not include (1) an abnormality manifested only by repeated criminal or otherwise antisocial conduct or (2) pathological or compulsive gambling."

whether a psychiatrist should have evaluated the petitioner and the proffered testimony as to the petitioner's diminished capacity, especially in light of the fact that the trial court had admitted other evidence of diminished capacity and later charged the jury on that defense:[6]

"The Witness: Again, at that point in time, I felt it was too late, and [defense counsel] probably felt the same way. I mean, as a practical matter during the trial, she was having a difficult time with Judge Murray. At one point, the trial had to be called—a recess of the trial because she was crying and upset. It was a difficult thing for her. And so, for her—and the other thing is, unfortunately, I was not second chair, I was not there, I wasn't in the conferences, so I don't know what she did to try and get the reports in or what occurred. All I tried to do was help from outside the courtroom, basically. And that's the position that I was in."

The court found that "[b]oth [defense counsel] and attorney Avitabile testified that they did not ask the court for an extension of the time period for notifying the state of the intent to call an expert simply because they felt that the court would have denied such a request . . . . Upon questioning of attorney Avitabile by the

---

[6] The court cited several pieces of evidence that were introduced during the petitioner's habeas trial to prove his diminished capacity. Those included the testimony of attorney Gregory St. John, who previously represented the petitioner and testified that the petitioner is unable to comprehend certain things; the results of a bubble test (a multiple choice type test in which the participant fills in an oval that corresponds to his or her answer, with the results of the test being used to aid in the assessment of intelligence); and witness testimony concerning the petitioner's school records and difficulties with cognitive abilities. The court noted, however, that the petitioner's actual school records were not admitted into evidence because of counsel's late disclosure to the state. That is supported by a review of the habeas transcript, which shows that in response to the question, "Is it your recollection then that the records, the school records that you wanted to get in to show he was slow, didn't get in because you didn't comply with discovery?" counsel responded, "That's pretty much it."

habeas court, attorney Avitabile agreed with the court that the Practice Book rule gives the judge the *discretion* to fashion an appropriate remedy in a situation like this. . . . Further, [both counsel] were not certain that Judge Murray would have denied this request, and [defense counsel] should have at least tried to get an extension of time. Additionally, a denial of such a request under the circumstances could have been an issue on appeal." (Emphasis in original.)

The court, after hearing and weighing the testimony of the witnesses, concluded that the petitioner had sustained his burden of proving that his attorney had rendered ineffective assistance by failing to request a continuance to have the petitioner evaluated by a psychiatrist and by failing to have the petitioner so evaluated. Additionally, the court credited the testimony of Felber, a well known psychiatrist who has practiced in Connecticut for more than fifty-seven years, who testified that "at the time of the commission of the crime, the petitioner was of pathologically diminished capacity in that his mental state caused him to exaggerate the threats against him, to be more fearful than the actual situation warranted and, therefore, [that he] thought he was acting in self-defense or in response to the threat, which, to him, was much larger than was taking place and that he therefore lacked the intent to commit murder." The state provided no medical expert to rebut that testimony.

On the basis of those factual findings and legal conclusions, the court reasonably could have concluded that the petitioner was denied his constitutional right to effective assistance of counsel. In addition, as the petitioner argues, "[defense counsel] testified that this was her supervisor's file and she thought that he would be sitting in the courtroom while she was trying the case and she *did not want to show him up*." (Emphasis added.) Avitabile testified that defense counsel "was

having a difficult time with Judge Murray. At one point, the trial had to be called—a recess of the trial, because she was crying and upset. It was a difficult thing for her."

The court logically could have concluded, as it did, that the failure to request a continuance to have the petitioner evaluated and to offer the testimony of a psychiatrist deprived the petitioner of an opportunity to establish his diminished capacity defense, thereby casting significant doubt on the state's case. We conclude that the petitioner has overcome the presumption that under the circumstances, counsel's failure to request a continuance in order to have the petitioner evaluated and to offer the testimony of the evaluating psychiatrist could be considered sound trial strategy and, instead, conclude that this failure amounted to such serious error that in its absence, the fact finder likely would have had a reasonable doubt respecting the petitioner's guilt. See *Fair* v. *Warden*, supra, 211 Conn. 408; *Henderson* v. *Commissioner of Correction*, supra, 80 Conn. App. 504.

The court logically and reasonably could have concluded that the petitioner was prejudiced by the deficient performance of his trial counsel and that there was a reasonable probability that the result of the proceeding would have been different had counsel proffered the testimony of an evaluating psychiatrist. Our review of the record brings us to the same conclusion. The errors of the petitioner's trial counsel in her representation of the petitioner were so serious as to deprive the petitioner of a fair and reliable trial, thereby depriving him of his constitutional rights.

The judgment is affirmed.

In this opinion the other judges concurred.