DAVID LEWIS *v.* COMMISSIONER OF CORRECTION
(AC 24519)

Schaller, Flynn and Peters, Js.

Argued November 29, 2004—officially released June 28, 2005

*Deborah G. Stevenson*, special public defender, for the appellant (petitioner).

*Rita M. Shair*, senior assistant state's attorney, with whom were *Michael Dearington*, state's attorney, and, on the brief, *Mary Elizabeth Baran*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

SCHALLER, J. The petitioner, David Lewis, appeals from the judgment of the habeas court, denying his petition for a writ of habeas corpus.[1] On appeal, the petitioner claims that the court improperly determined

---

[1] Following the dismissal of his initial petition for a writ of habeas corpus, the petitioner's attorney failed to notify him in a timely fashion and, as a result, his petition for certification to appeal was filed late and denied as untimely, as was permission to file a late appeal. The petitioner filed, inter alia, a second petition for a writ of habeas corpus seeking restoration of his appellate rights and another petition for certification to appeal from the denial of his initial petition for a writ of habeas corpus. His right to file a petition for certification to appeal was restored; however, his petition for certification to appeal from the denial of the habeas petition was denied initially. After the court received the memorandum of decision on the second habeas petition, the court vacated its earlier order and granted permission to appeal on March 9, 2004.

that he received the effective assistance of trial counsel. We affirm the judgment of the habeas court.

The following facts and procedural history are relevant to our resolution of the petitioner's appeal. On June 21, 1990, the jury convicted the petitioner of murder and conspiracy to commit murder in connection with the shooting death of Fitzroy Pink, and acquitted him of conspiracy to commit murder in connection with the shooting of Kenneth Pascoe. The trial court sentenced the petitioner to a total effective sentence of fifty years imprisonment. The petitioner directly appealed his conviction through his trial counsel, attorney John R. Williams. Our Supreme Court affirmed his conviction. See *State* v. *Lewis*, 220 Conn. 602, 600 A.2d 1330 (1991).

Our Supreme Court determined that the jury reasonably could have found the following facts. "On Sunday evening, September 19, 1988, the [petitioner] and Trevor Pinnock, who were friends, were playing soccer with other participants at a field near Hillhouse High School in New Haven. The victims, Fitzroy 'Soup' Pink and Kenneth Pascoe, although not participants in the game, were in the vicinity of the soccer field while the match was being played. At the conclusion of the game, the [petitioner] and Pinnock left the soccer field together and walked to the [petitioner's] car, which was parked on County Street, adjacent to the soccer field. There the two men obtained handguns from inside the vehicle. Thereafter, both armed, they momentarily separated. Pinnock walked over to Pascoe, who was seated in his car, and pointed an automatic handgun at his head. Pinnock told Pascoe, 'You're dead,' and pulled the trigger, but his gun failed to fire. Moments later the [petitioner] aimed his gun at Pink and, at a distance of approximately two car lengths, shot Pink three or four times, killing him. The [petitioner] and Pinnock then ran from the scene together.

"At the time of the [petitioner's] arrest nearly one year later, the police discovered an identification card in the [petitioner's] possession that bore Pinnock's name and photograph. When questioned about the card, the [petitioner] asserted that he knew no one named Trevor Pinnock. He did, however, admit having shot and killed Pink." Id., 604–605.

Following his unsuccessful appeal to our Supreme Court, the petitioner filed a pro se petition for a writ of habeas corpus on August 28, 1993, alleging ineffective assistance of counsel. He subsequently filed, through his habeas counsel, attorney Robert A. Lacobelle, an amended petition on January 20, 1998. After hearing three days of testimony over the course of approximately nine months, the habeas court denied his petition and this appeal followed. Additional facts will be set forth as necessary.

As an initial matter, we set forth the standard of review and legal principles that guide our resolution of the petitioner's appeal. "Our standard of review in a habeas corpus proceeding challenging the effective assistance of trial counsel is well settled. Although a habeas court's findings of fact are reviewed under the clearly erroneous standard of review . . . [w]hether the representation a [petitioner] received at trial was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Internal quotation marks omitted.) *Woods* v. *Commissioner of Correction*, 85 Conn. App. 544, 548, 857 A.2d 986, cert. denied, 272 Conn. 903, 863 A.2d 696 (2004); see also *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 152–53, 662 A.2d 718 (1995).

The petitioner's claim on appeal concerns the alleged ineffective assistance of trial counsel. "A petitioner's right to the effective assistance of counsel is guaranteed

by the sixth and fourteenth amendments to the United States constitution, and by article first, § 8, of the Connecticut constitution. The right to counsel is the right to the effective assistance of counsel. . . . The right to counsel, however, is the right to effective assistance and not the right to perfect representation." (Internal quotation marks omitted.) *Woods* v. *Commissioner of Correction*, supra, 85 Conn. App. 549.

"In *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction. . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." (Internal quotation marks omitted.) *Toccaline* v. *Commissioner of Correction*, 80 Conn. App. 792, 798, 837 A.2d 849, cert. denied, 268 Conn. 907, 845 A.2d 413, cert. denied sub nom. *Toccaline* v. *Lantz*, 543 U.S. 854, 125 S. Ct. 301, 160 L. Ed. 2d 90 (2004)

To establish the first prong of the *Strickland* test, the petitioner must first establish that his attorney's performance was "not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law . . . ." (Citations omitted; internal quotation marks omitted.) *Summerville* v. *Warden*, 29 Conn. App. 162, 170, 614 A.2d 842 (1992), rev'd on other grounds, 229 Conn. 397, 641 A.2d 1356 (1994). The court must be mindful that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances

of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Internal quotation marks omitted.) *Toccaline* v. *Commissioner of Correction*, supra, 80 Conn. App. 798–99.

Turning to the prejudice component of the *Strickland* test, "[i]t is not enough for the [petitioner] to show that the errors [made by counsel] had some conceivable effect on the outcome of the proceeding. . . . Rather, [the petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." (Internal quotation marks omitted.) *Woods* v. *Commissioner of Correction*, supra, 85 Conn. App. 550. A court "hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. . . . [A] court making the prejudice inquiry must ask if the [petitioner] has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Strickland* v. *Washington*, supra, 466 U.S. 695–96.

The petitioner claims that the court improperly determined that he received the effective assistance of his trial counsel. The petitioner alleges that several instances of conduct by Williams failed to satisfy the *Strickland* standard. Specifically, the petitioner argues that Williams failed to conduct an adequate investiga-

tion,[2] improperly questioned one of the state's witnesses, improperly permitted the state to adduce testimony regarding the petitioner's silence after the petitioner had been advised of his rights pursuant to *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), failed to meet with the petitioner prior to trial and failed to inform the petitioner of his right to testify at his criminal trial. We will address each of those arguments in turn.

The following additional facts provide the necessary backdrop for the resolution of the petitioner's claim. At the habeas trial, the petitioner testified that Williams did not meet with him prior to jury selection to discuss the case. The petitioner further testified that Williams did not review any witness statements with him during the trial, did not show him any investigative results and never discussed any defense strategies with him. The petitioner also noted that he did not have the opportunity to discuss with Williams the facts of the case or what occurred on the evening of the murder. The petitioner testified that he never saw or reviewed the warrant affidavits or the arrest warrant with Williams. Finally, the petitioner testified that Williams failed to hire a professional to investigate the case.

Owen Lewis, the petitioner's brother, provided testimony that supported the petitioner's statements concerning whether Williams planned to hire an investigator. Owen Lewis stated that Williams told him that the retainer fee of $40,000 that he paid on behalf of the petitioner included the cost of an investigator.

---

[2] Our review of the record persuades us that Williams' actions with respect to the investigation bordered on deficient representation that was not reasonably competent or within the range displayed by lawyers with ordinary training and skill in the criminal law. We do not condone Williams' apparent substandard conduct. We agree with the habeas court, however, that the petitioner failed to demonstrate any prejudice as a result of Williams' deficiencies.

Owen Lewis further testified that he attended school full-time and was employed in a part-time capacity, and, thus, could not have investigated the case even if Williams had asked him to do so. That testimony disputed Williams' statements to the contrary.

The petitioner's expert witness, attorney James Ruane, testified that Williams, as trial counsel, had a duty to conduct a complete and thorough pretrial investigation and that failure to do so constituted deficient performance. Ruane further stated that Williams' investigative efforts fell below the competent level of practice of criminal defense lawyers in Connecticut.

Williams testified that he in fact did not recall meeting with the petitioner prior to trial, but that another attorney from his office interviewed the petitioner. Williams stated that he did not hire an investigator, but chose to rely on the investigative efforts of the petitioner's brother, Owen Lewis. Williams stated that Owen Lewis agreed to be the primary investigator because a stranger would not be able to penetrate the community in which it was necessary to conduct the investigation. Williams testified that he often utilized intelligent, self-motivated family members to locate witnesses and to produce whatever witnesses were available.

I

First, the petitioner claims that trial counsel's representation was inadequate because counsel failed to perform an adequate investigation. Specifically, the petitioner argues that Williams improperly failed to hire a private investigator to discover defense witnesses and that Williams improperly failed to investigate an error in the medical examiner's report. We conclude that the petitioner failed to establish that he suffered any prejudice and, therefore, his arguments must fail.

A

The petitioner argues that Williams failed to perform an adequate investigation and, as a result, conducted an inadequate cross-examination of the prosecution's key witness, Jerome Bailey. The petitioner contends that had the investigation been constitutionally adequate, Williams would have discovered defense witnesses to impeach Bailey. Bailey testified at the petitioner's criminal trial that he was at the soccer game on the day in question selling drinks from the trunk of his car. He stated that after hearing gunshots, he saw the petitioner with a gun in the area where the shooting took place.

The court heard testimony from Owen Lewis, who subsequently had conducted an investigation in 1992 and discovered two witnesses, Carl Mitchell and Leonard Moore, who would have impeached Bailey. The petitioner contends that Williams should have discovered those witnesses prior to the trial. According to the petitioner, Moore would have testified that Bailey lied about his whereabouts on the day in question to protect his cousin, Mitchell, who actually was present at the soccer field and was selling beer without a permit from his car. Mitchell's statement indicated that although he heard shots fired in the park, he did not actually observe the shooting.

In its decision, the court declined to resolve the question of whether Williams' conduct was constitutionally ineffective. Although we by no means endorse Williams' apparently substandard conduct, we "need not determine the deficiency of counsel's performance if consideration of the prejudice prong will be dispositive of the ineffectiveness claim. . . . [I]t . . . requires the petitioner to establish a probability sufficient to undermine confidence in the outcome." (Citation omitted; internal quotation marks omitted.) *Nieves* v. *Commissioner of*

*Correction,* 51 Conn. App. 615, 620, 724 A.2d 508, cert. denied, 248 Conn. 905, 731 A.2d 309 (1999); see also *Holley* v. *Commissioner of Correction,* 62 Conn. App. 170, 174, 774 A.2d 148 (2001) (object of ineffectiveness claim is not to grade counsel's performance); *Taft* v. *Commissioner of Correction,* 47 Conn. App. 499, 504, 703 A.2d 1184 (1998). We focus our inquiry on whether the petitioner has demonstrated any prejudice; that is, whether the result would have been different. See *Nieves* v. *Commissioner of Correction,* supra, 620.

The court stated that "[w]hile the production of the two [written] statements [by Mitchell and Moore] at first blush [supports] the petitioner's claim that attorney Williams failed to investigate the petitioner's case, a closer look reveals that the statements are not persuasive evidence. In fact, what stands out first to the court is the fact that they are *written* statements and they are nearly seven years old. The petitioner did not produce Mitchell or Moore to testify at the habeas hearing. Nor did he provide an explanation as to why he failed to produce them." (Emphasis in original.)

The court also stated that it could not determine whether the statements would have affected the outcome of the criminal trial because it was unclear whether Mitchell and Moore, whose statements were obtained approximately two years after the petitioner's conviction, would have been available to testify. Moreover, even if they had been available to testify, it was unclear to the court that they would have done so.

"In a habeas corpus proceeding, the petitioner's burden of proving that a fundamental unfairness had been done *is not met by speculation but by demonstrable realities.*" (Emphasis added.) *Ostolaza* v. *Warden,* 26 Conn. App. 758, 765, 603 A.2d 768, cert. denied, 222 Conn. 906, 608 A.2d 692 (1992). Although, Owen Lewis obtained two written statements from the witnesses

after the trial, the written statements were nearly seven years old at the time that they were presented to the habeas court. Additionally, neither of the two witnesses testified at the habeas hearing.

Because the petitioner failed to produce any evidence to prove that the witnesses were available to testify at the trial or that their testimony would have had an impact on the outcome of the trial, the petitioner failed to demonstrate the prejudicial effect of Williams' lack of investigation. This claim of ineffective assistance of counsel must fail.

B

The petitioner next argues that Williams provided ineffective representation by failing to investigate the victim's medical records, which he claims might have created reasonable doubt by implicating a third party. We are not persuaded.

The medical records stated that the victim "[h]ad an argument in the cafe. Later found in the street." Those statements were not supported by any of the facts relevant to the petitioner's criminal trial. Rather, the record as a whole suggests that the petitioner was under the belief that the victim was out to get him and that the petitioner shot the victim in the car. The record does not suggest that the victim was in a cafe on the day in question or that he got into an argument with anyone. Williams stated that he chose not to investigate the records because there was no evidence to suggest that the information in the medical records was anything more than a clerical error.

Our Supreme Court has stated that "[c]onstitutionally adequate assistance of counsel includes competent pretrial investigation. . . . Hindsight is irrelevant. . . . [T]he issue, therefore, is not what counsel should have done to constitute the proper representation of the

[petitioner] considering the case in retrospect, but rather, whether in the circumstances, as viewed at the time, the [petitioner] received effective assistance of counsel." (Citations omitted; internal quotation marks omitted.) *Siemon* v. *Stoughton*, 184 Conn. 547, 554–55, 440 A.2d 210 (1981). Furthermore, the effective assistance of counsel incorporates the obligation to investigate the circumstances of the case as well as all avenues leading to facts relevant to the merits of the case. *Summerville* v. *Warden*, supra, 29 Conn. App. 171. "[C]ounsel need not track down *each and every lead or personally investigate every evidentiary possibility before* choosing a defense and developing it." (Emphasis added; internal quotation marks omitted.) *Baillargeon* v. *Commissioner of Correction*, 67 Conn. App. 716, 721, 789 A.2d 1046 (2002); see also *Walton* v. *Commissioner of Correction*, 57 Conn. App. 511, 522, 749 A.2d 666, cert. denied, 254 Conn. 913, 759 A.2d 509 (2000).

Williams testified that he chose not to investigate conflicting information in the victim's medical records. The petitioner alleges that Williams should have investigated the medical report to try to implicate a third party in the shooting. At the habeas hearing, however, the petitioner did not produce any evidence suggesting that the medical report was anything more than a clerical error. Furthermore, the petitioner failed to offer evidence at the habeas hearing implicating third party culpability. As we have stated, the investigation conducted by defense counsel need not track down each and every lead.

Because no evidence was produced by the petitioner to support his claims, the petitioner failed to meet his burden of demonstrating that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* v. *Washington*, supra, 466 U.S. 694. We agree

with the court that the petitioner failed to prove that he was prejudiced by Williams' inadequate investigation.

## II

The petitioner claims that the court improperly failed to conclude that Williams' representation was deficient when he failed to object to the prosecutor's efforts to adduce testimony regarding the petitioner's post-*Miranda* silence. The petitioner further claims that Williams improperly questioned one of the state's witnesses and, as a result, allowed the prosecutor to obtain additional testimony regarding that post-*Miranda* silence. We agree with the court that Williams' performance was not deficient.

The following additional facts are necessary for our discussion. At the petitioner's criminal trial, the prosecutor called Francisco Ortiz, a detective with the New Haven police department, as a witness. Ortiz testified that subsequent to the petitioner's arrest, the petitioner waived his right to remain silent and agreed to be interviewed. Ortiz testified that during the interview, the petitioner provided an oral confession that was not recorded. Ortiz stated that "[the petitioner] admitted to me that he killed Mr. Fitzroy Pink, whom he referred to as Soup. He said, 'I killed him,' because if he had not killed him, [then] Soup would have somehow killed him." Ortiz subsequently testified that he obtained a taped statement from the petitioner on an unrelated matter. Ortiz stated that when he attempted to speak further with the petitioner on tape about the killing of Pink, the petitioner refused. The prosecutor questioned Ortiz as to why he discontinued questioning the petitioner, and Ortiz responded that "the constitution prevents [the police] from seeking anything further once [the petitioner] invokes the fact that he doesn't want to speak with the police." The petitioner claims that Ortiz's response violated his constitutionally protected

right to remain silent and the rule enunciated by the United States Supreme Court in *Doyle* v. *Ohio*, 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976). The petitioner further argues that Williams was deficient for not objecting to Ortiz's response.

To determine whether Williams' conduct was deficient, we first must determine whether Ortiz's response violated the petitioner's constitutionally protected rights and the rule established in *Doyle* v. *Ohio*, supra, 426 U.S. 610. In that case, the United States Supreme Court established the principle that after *Miranda* warnings are given, the state may not use the silence of an accused, which is "insolubly ambiguous"; id., 617; to impeach the accused's testimony. Id., 617–18. The silence also may not be used to imply guilt or to indicate a consciousness of guilt. See id.; *State* v. *Cooper*, 227 Conn. 417, 440, 630 A.2d 1043 (1993). The principle behind the *Doyle* holding is that "it is fundamentally unfair to promise an arrested person that his silence will not be used against him and thereafter to breach that promise by using the silence to impeach his trial testimony." (Internal quotation marks omitted.) *State* v. *Kuranko*, 71 Conn. App. 703, 709, 803 A.2d 383 (2002). The United States Supreme Court reasoned that the impeachment of an accused through evidence of his silence following his arrest and receipt of *Miranda* warnings violates due process. *Doyle* v. *Ohio*, supra, 618. Put another way, "[t]he factual predicate of a claimed *Doyle* violation is the use by the state of [an accused's] postarrest and [post-*Miranda*] silence either for impeachment or as affirmative proof of his guilt." *State* v. *Joly*, 219 Conn. 234, 256, 593 A.2d 96 (1991).

Our Supreme Court has concluded, however, that references at trial to the accused's right to remain silent are not always constitutionally impermissible. *State* v. *Moye*, 177 Conn. 487, 496, 418 A.2d 870, vacated and remanded on other grounds, 444 U.S. 893, 100 S. Ct.

199, 62 L. Ed. 2d 129, on appeal after remand, 179 Conn. 761, 409 A.2d 149 (1979). For example, a *"Doyle* violation may, in a particular case, be so insignificant that it is clear beyond a reasonable doubt that the jury would have returned a guilty verdict without the impermissible question or comment upon [an accused's] silence following a *Miranda* warning. Under such circumstances, the state's use of [an accused's] postarrest silence does not constitute reversible error." *State* v. *Silano*, 204 Conn. 769, 781, 529 A.2d 1283 (1987). Additionally, we have stated that "[t]he cases wherein the error has been found to be prejudicial disclose repetitive references to the [accused's] silence, reemphasis of the fact on closing argument, and extensive, strongly-worded argument suggesting a connection between the [accused's] silence and his guilt." (Internal quotation marks omitted.) *State* v. *Kuranko*, supra, 71 Conn. App. 712. A *Doyle* violation has been found to be harmless when the prosecutor's comments did not strike at the "jugular" of the accused's story. *State* v. *Silano*, supra, 781; see also *United States* v. *Davis*, 546 F.2d 583, 594 (5th Cir.), cert. denied, 431 U.S. 906, 97 S. Ct. 1701, 52 L. Ed. 2d 391 (1977). Also, testimony concerning investigative efforts that refer to an [accused's] postarrest silence is constitutionally permissible *"where only one police officer briefly describe[s] what had transpired when [the accused] was interviewed at the police station."* (Emphasis added.) *State* v. *Smith*, 42 Conn. App. 41, 48, 680 A.2d 1340 (1996). We address each of the petitioner's claims in turn.

A

The petitioner first argues that Williams improperly permitted the state to adduce testimony regarding the petitioner's silence by failing to object to a question regarding his post-*Miranda* silence. The court noted that Ortiz's testimony was not being used to impeach the petitioner's credibility, but rather was introduced

to show the investigative effort made by the police and the sequence of events as they unfolded. The court determined that Ortiz's response did not imply that the petitioner was guilty or indicate a consciousness of guilt. Rather, Ortiz testified about the procedural aspects of the interrogation and explained the reason why he stopped questioning the petitioner. See id.

Here, Ortiz made a single reference to the petitioner's invocation of his right to remain silent. The challenged response was a brief and minor part of Ortiz's testimony that did not serve to highlight the petitioner's silence. Furthermore, Ortiz testified that the petitioner confessed to the murder prior to his "objectionable" response. It cannot be said that the state's question and Ortiz's response struck at the "jugular" of the petitioner's defense. Finally, there was no evidence that the state made repeated references, emphasized the petitioner's silence in closing argument to the jury, or engaged in extensive argument suggesting a connection between the silence and the petitioner's guilt. In short, Ortiz's testimony did not violate the principles set forth in *Doyle*. As a result, Williams' failure to object to the testimony was not inappropriate.

We also agree with the court's conclusion that even if Williams should have objected to the testimony, it is clear that the petitioner was not prejudiced as a result of his failure to do so.[3] The state, prior to asking Ortiz about his questioning of the petitioner, obtained testimony from Ortiz that the petitioner twice had indicated that he killed the victim. In that context, we fail to see how the petitioner would have suffered any prejudice from Williams' failure to object to the testimony regarding the petitioner's post-*Miranda* silence. This claim, therefore, fails to satisfy either of the *Strickland* prongs.

[3] Williams may have recognized that Ortiz's testimony was harmless and made a strategic decision not to object to the testimony so as not to draw the jury's attention to it. See part II B.

## B

The petitioner argues that Williams' performance was deficient as a result of improper questions to Ortiz that allowed the prosecutor to obtain additional testimony and to introduce evidence regarding the petitioner's post-*Miranda* silence. We are not persuaded.

During cross-examination of Ortiz, Williams elicited testimony to the effect that the petitioner twice invoked his right to remain silent during the taped confession of an unrelated matter. As a result of that testimony, the prosecutor successfully entered the tape and a transcript of the interrogation into evidence. Williams testified at the habeas hearing that asking Ortiz about the petitioner's invocation of his right to remain silent was a deliberate tactical decision. Williams stated that the petitioner's only hope of an acquittal was to persuade the jury that Ortiz was lying when he said that the petitioner had confessed to the killing.

In its memorandum of decision, the court pointed out that "[i]t is all too tempting for a [petitioner] to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission was unreasonable." (Internal quotation marks omitted.) The court reviewed the transcript from the underlying criminal trial. It determined that Williams' decision was a tactical decision and was not unreasonable under the circumstances. It further found that "[i]t was attorney Williams' educated belief that the only way to lessen the blow of Ortiz's testimony was to cast doubt on his credibility."

The court evaluated all of the testimony and determined that the petitioner failed to meet his burden of proving both of the *Strickland* prongs. We agree with that determination. The petitioner bears the burden of

overcoming the presumption that the challenged action might be considered sound trial strategy. *Rivera* v. *Commissioner of Correction*, 70 Conn. App. 452, 456, 800 A. 2d 1194, cert. denied, 261 Conn. 921, 806 A.2d 1061 (2002). Williams' decision to elicit testimony regarding the petitioner's invocation of his right to remain silent was guided by professional judgment. It was made after eyewitness testimony implicating the petitioner and Ortiz, whom the court described as a "devastating" witness, testified that the petitioner had confessed to the murder. The decision to elicit the testimony therefore falls into the category of trial strategy or judgment calls that we consistently have declined to second guess. See *Clarke* v. *Commissioner of Correction*, 43 Conn. App. 374, 386, 682 A.2d 618 (1996), appeal dismissed, 249 Conn. 350, 732 A.2d 754 (1999); *Davis* v. *Warden*, 32 Conn. App. 296, 305, 629 A.2d 440, cert. denied, 227 Conn. 924, 632 A.2d 701 (1993). Accordingly, this claim must fail.

## III

The petitioner also claims that Williams was ineffective because he failed to meet with the petitioner prior to trial. The petitioner, however, failed to brief the issue to the habeas court. As a result of the petitioner's failure to brief the issue, the court deemed the issue waived.[4] The petitioner argues that it was improper for the court to reach such a conclusion. We disagree.[5]

---

[4] The court, in its decision, noted that the petitioner raised thirteen instances alleging Williams' ineffectiveness. The court, after listing the petitioner's various claims, stated that "[a]ny issue not briefed is deemed waived by the court."

[5] Although it is not necessary for us to review that claim, it is clear that the petitioner failed to satisfy both prongs of the *Strickland* analysis. The reliance by Williams on an associate in his law firm to conduct pretrial preparations in this case cannot be considered deficient under *Strickland*. We do note, however, that it likely would have been helpful for Williams to meet with the petitioner before the start of the criminal trial.

In *Collins* v. *Goldberg*, 28 Conn. App. 733, 738, 611 A.2d 938 (1992), we held that "[b]ecause the plaintiff failed to brief the other claims set forth in the complaint, the trial court properly considered them abandoned." Similarly, our Supreme Court has stated that reviewing courts "are not required to review issues that have been improperly presented to th[e] court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned. . . . *These same principles apply to claims raised in the trial court.*" (Citation omitted; emphasis added; internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 266 Conn. 108, 120, 830 A.2d 1121 (2003).

On the basis of the principles set forth in *Connecticut Light & Power Co.* and *Collins*, we conclude that the court properly determined that any allegation raised in the petition that was not briefed was abandoned and waived. We decline to review the substantive merits of the issue.

## IV

The petitioner's final claim is that he was denied the effective assistance of counsel because Williams failed to inform him that he had a right to testify at his criminal trial. We disagree.

At the habeas hearing, the petitioner testified that he informed Williams of his desire to testify at trial. The petitioner stated that Williams never informed him that it was his choice to testify or that he had any right to take the witness stand. The petitioner testified that "[Williams] didn't feel it was a good idea for me to take

the [witness] stand" because "[the prosecution] would bring up the issue of the ID, the identification [that belonged to Pinnock] that [the police] took from me, and the marijuana."

Williams testified at the habeas hearing that the petitioner never expressed a desire to testify and that he recalled informing the petitioner that it was not a good idea for him to testify at trial. Williams stated that although he could not remember explicitly advising the petitioner of his right to testify, he could state "categorically" that he never told the petitioner that he would not let him testify. Williams stated that it "was his understanding from discussions with the petitioner as well as notes taken by another attorney that were in the petitioner's file, that the petitioner had in fact shot Fitzroy Pink because he had heard on the street that Pink was 'out to get him.'" Williams further stated that he did not think that the petitioner should testify because "his taking the [witness] stand could only have injured him, unless he was going to get up there and make up a story and, obviously, I couldn't be a party to that." Accordingly, if the petitioner had chosen to take the witness stand, Williams testified that he would have moved to withdraw from the case.

It is axiomatic that "[i]t is the right of every criminal defendant to testify on his own behalf; *Rock* v. *Arkansas*, 483 U.S. 44, 49, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987); and to make that decision after full consultation with trial counsel." *Ostolaza* v. *Warden*, supra, 26 Conn. App. 763.[6] Nevertheless, "the burden [is] on the peti-

---

[6] "The right to testify on one's own behalf at a criminal trial has sources in several provisions of the [United States] Constitution. It is one of the rights that are essential to due process of law in a fair adversary process. . . . The necessary ingredients of the Fourteenth Amendment's guarantee that no one shall be deprived of liberty without due process of law include a right to be heard and to offer testimony . . . . The right to testify is also found in the Compulsory Process Clause of the Sixth Amendment, which grants a defendant the right to call witnesses in his favor . . . . Logically included . . . is a right to testify himself. . . . The opportunity to testify

tioner to show that he was not aware of his right to testify, not on the state to show that he was." *Rodriquez* v. *Commissioner of Correction*, 35 Conn. App. 527, 537, 646 A.2d 919, cert. denied, 231 Conn. 935, 650 A.2d 172 (1994). Furthermore, it is well established that "[c]riminal defendants are required to take some affirmative action regarding their right to testify before they can claim that they have been deprived of that right." Id.

The court relied on *Rodriquez* to support its conclusion that the petitioner understood that he had the right to testify from his general discussions with counsel. In *Rodriquez*, the petitioner presented no evidence to establish that trial counsel had *never* told him that he had the right to testify. Id., 536. His trial counsel had no specific recollection of informing the petitioner of his right to testify, but rather testified that it was his opinion that the petitioner was aware of his right. Id. The court found that "[t]here would have been no need for any discussion between the petitioner and his trial counsel about the pros and cons of the petitioner's testifying unless it was implicitly understood that the petitioner had the right to testify." Id. Thus, the court held that the petitioner implicitly understood that he had the right to testify. Id., 536–37.

The facts of the present case support the same result reached by the court in *Rodriquez*. The court specifically found that the petitioner did not express his desire to testify at the trial. The petitioner merely demonstrated that Williams could not recall specifically

is also a necessary corollary to the Fifth Amendment's guarantee against compelled testimony. . . . A defendant's right to testify is also protected by his rights to a fair trial, to due process, to present a defense, and to be free from compelled testimony under article XVII of the amendments to the Connecticut constitution and under article first, § 8, of the Connecticut constitution." (Internal quotation marks omitted.) *State* v. *Fisher*, 82 Conn. App. 412, 421–22, 844 A.2d 903, cert. denied, 269 Conn. 911, 852 A.2d 741 (2004).

informing the petitioner of his right to testify. The petitioner failed to establish that he was denied the right to testify by Williams. The court did find, however, that *on the basis of the petitioner's testimony*, Williams and the petitioner had discussions regarding the advantages and disadvantages of having the petitioner testify. The court also found that the petitioner had stated that Williams informed him that it would not have been beneficial to testify at his criminal trial. On the basis of those discussions, the finding of the court that the petitioner implicitly understood that he had the right to testify was not clearly erroneous. The record amply supports the court's conclusion that discussions regarding the petitioner's testifying occurred and that the decision for the petitioner not to take the witness stand was a tactical decision at trial that was amply based on the facts of the case. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Internal quotation marks omitted.) *Bond* v. *Commissioner of Correction*, 87 Conn. App. 50, 56, 863 A.2d 757, cert. denied, 273 Conn. 912, 870 A.2d 1079 (2005).

We conclude that the petitioner failed to satisfy his burden of proof with respect to his claim of ineffective assistance of counsel. The court, therefore, properly denied the petition for a writ of habeas corpus on that basis.

The judgment is affirmed.

In this opinion the other judges concurred.