# BERNALE BRYANT *v.* COMMISSIONER OF CORRECTION
## (AC 26513)

Bishop, DiPentima and Gruendel, Js.

Argued October 26, 2006—officially released February 6, 2007

*Michael E. O'Hare*, supervisory assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *David L. Zagaja*, assistant state's attorney, for the appellant (respondent).

*Peter Tsimbidaros*, special public defender, for the appellee (petitioner).

*Opinion*

BISHOP, J. The respondent, the commissioner of correction, appeals following the denial of her petition for certification to appeal from the habeas court's judgment granting relief to the petitioner, Bernale Bryant, on his petition for a writ of habeas corpus. The respondent claims that the court (1) abused its discretion by denying the petition for certification to appeal and (2) improperly concluded that the petitioner's trial counsel was ineffective by failing to present a theory of defense that was not supported by the forensic evidence or the petitioner's testimony.[1] We agree with the respondent and reverse the judgment of the habeas court.

The following facts are relevant to the resolution of the respondent's appeal. The petitioner was charged with murder in violation of General Statutes § 53a-54a (a). After a trial by jury, the petitioner was acquitted of the murder charge but found guilty of the lesser included offense of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1). On January 11, 2001, the trial court sentenced the petitioner to nineteen years incarceration to be served consecutively to a three year sentence that he was already serving. The petitioner appealed from his conviction, which was affirmed by this court on August 6, 2002. See *State* v.

---

[1] The respondent also claims that the court improperly based its decision on claims that were not raised in the amended petition for a writ of habeas corpus. Because we reverse the decision of the court on other grounds, we do not address this claim.

*Bryant*, 71 Conn. App. 488, 802 A.2d 224, cert. denied, 261 Conn. 939, 808 A.2d 1133 (2002).

In *Bryant*, the petitioner's direct appeal, this court concluded that the jury reasonably could have found the following facts. During the early morning hours of April 14, 1996, Gary Fournier and the victim, Edward Jones, drove a blue Ford to Irving Street in Hartford to get narcotics. They planned to obtain the narcotics without paying for them. Fournier stopped his car and was approached by the petitioner, a known drug seller. Soon thereafter, the petitioner handed Fournier some cocaine. As soon as Fournier got the cocaine, he drove off. The petitioner, however, hung on to the car but released his hold just as the car ran through a stop sign and was struck by another automobile. The petitioner dragged Fournier from the car, pushed him to the ground and kicked him several times before running to the passenger's side of the car. The petitioner dragged Jones through the window and hit and kicked him repeatedly while he lay on the street. The petitioner then ran from the scene. Jones was taken to a hospital where he was pronounced dead.

The jury heard evidence that the petitioner had given a statement to the police in which he stated that he had been dragged by Fournier's car toward the intersection, and he testified to that effect at trial.

On December 17, 1999, Ewan Sharp was arrested by the Hartford police. While being questioned by the police, Sharp informed them that he had witnessed the April 14, 1996 collision and had seen the petitioner repeatedly beat Jones. On January 25, 2000, Sharp gave a written statement to the police concerning those events. The petitioner subsequently was arrested for the murder of Jones. On March 30, 2000, Sharp testified at the petitioner's probable cause hearing. On direct

examination, Sharp testified that he had been incarcerated since 1999 on a robbery charge and that he had four prior criminal convictions, at least one of which was a felony. He denied that the pending robbery charge influenced his testimony.

Sharp was granted complete transactional immunity to testify at the petitioner's trial. When he was called as a witness, however, Sharp refused to testify, initially claiming a fifth amendment privilege against self-incrimination. After determining that Sharp's fifth amendment privilege would not be implicated, the trial court ordered him to testify. Sharp continued to refuse to testify and was held in contempt. Because he refused to testify, the trial court found that Sharp was unavailable and allowed portions of his testimony from the probable cause hearing to be read to the jury.

The petitioner subsequently brought a petition for a writ of habeas corpus alleging, inter alia, that he was denied the effective assistance of counsel. The court found that the petitioner had been denied the effective assistance of counsel, set aside the petitioner's conviction and ordered a new trial. The respondent filed a petition for certification to appeal, which the court denied. This appeal followed.

We first address the respondent's claim that the court abused its discretion in denying the petition for certification to appeal. "A certifiable issue exists, warranting an appeal to this court, if a petitioner [for certification] can show that the habeas court abused its discretion. To do so, a petitioner must demonstrate that the resolution of the underlying claim involves issues that are debatable among jurists of reason, that a court could resolve the issues differently or that the questions involved deserve encouragement to proceed further." *Small* v. *Commissioner of Correction*, 98 Conn. App. 389, 391, 909 A.2d 533 (2006).

In ruling on the respondent's petition for certification to appeal, the court indicated as the reason for its denial that the respondent did not state any grounds for the petition. In fact, on her petition for certification to appeal, the respondent listed as grounds: "Any and all issues as may arise including, but not limited to, the court's decision was not supported by the evidence." Thus, the court's basis for denial, as stated, was factually inaccurate. Additionally, our review of the record makes it plain that this case involves issues that are debatable among jurists of reason. Indeed, we believe that the court incorrectly decided the principal issue of the effectiveness of counsel. Because the question of whether the petitioner was denied the effective assistance of counsel deserved encouragement to proceed further, the respondent's petition for certification should have been granted. See *Simms* v. *Warden*, 230 Conn. 608, 616, 646 A.2d 126 (1994).

We now turn to the merits of the respondent's claim that the court improperly found that the petitioner was denied the effective assistance of counsel. "Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Griffin* v. *Commissioner of Correction*, 97 Conn. App. 200, 202, 903 A.2d 273, cert. denied, 280 Conn. 922, 908 A.2d 543 (2006).

"A petitioner's right to the effective assistance of counsel is guaranteed by the sixth and fourteenth amendments to the United States constitution, and by article first, § 8, of the Connecticut constitution. The right to counsel is the right to the effective assistance

of counsel. . . . This right is equally applicable whether defense counsel is court-appointed . . . or . . . privately-retained counsel. . . . The right to counsel, however, is the right to effective assistance and not the right to perfect representation. . . .

"In *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction. . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." (Citation omitted; internal quotation marks omitted.) *Woods* v. *Commissioner of Correction*, 85 Conn. App. 544, 549, 857 A.2d 986, cert. denied, 272 Conn. 903, 863 A.2d 696 (2004). The task of showing that the conviction resulted from a breakdown in the adversary process, rendering a result unreliable is "herculean." *Lozada* v. *Warden*, 223 Conn. 834, 843, 613 A.2d 818 (1992).

"The first component, generally referred to as the performance prong, requires that the petitioner show that counsel's representation fell below an objective standard of reasonableness. . . . In *Strickland*, the United States Supreme Court held that [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a [petitioner] to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney

performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Internal quotation marks omitted.) *Santiago* v. *Commissioner of Correction*, 90 Conn. App. 420, 425, 876 A.2d 1277, cert. denied, 275 Conn. 930, 883 A.2d 1246 (2005), cert. denied sub nom. *Santiago* v. *Lantz*, 547 U.S. 1007, 126 S. Ct. 1472, 164 L. Ed. 2d 254 (2006).

In this case, the court heard testimony from the petitioner; David Smith, the petitioner's trial counsel; Leon Kaatz, an expert witness on criminal defense law and practice; Melissa Young-Duncan; John Gartley; Renee Fleury; and Thomas Davis. The court found that Smith had not called Young-Duncan, Gartley, Fleury and Davis to testify at the petitioner's criminal trial and that if those four individuals had testified, the jury reasonably could have found the following facts. Davis, a United States Marine Corps veteran and gunnery specialist, who was employed as an armed security guard, was driving his employer's vehicle on April 14, 1996. As he approached Albany Avenue and Irving Street, he heard the sound of small caliber weapons being fired. Immediately thereafter, he saw a blue Ford exit in the wrong direction from Irving Street, a one-way street, onto Albany Avenue. Davis' vehicle collided with the Ford. The operator of the Ford appeared to be slumped over

the steering wheel. The Ford was pursued by a white Cadillac or Lincoln, which also was traveling in the wrong direction on Irving Street. A light skinned Hispanic man exited the white vehicle and approached Davis. The Hispanic man was carrying something in his hand, which Davis could not see. Knowing the neighborhood and having heard gunshots, Davis drew and displayed his firearm. The Hispanic man retreated to the white vehicle, which left the scene. At no time did Davis see anyone remove a person from the Ford, beat or kick the person. Davis spoke with Smith or Smith's investigator before the criminal trial. Davis also reported the gunshots he had heard on the night of the incident to the police, but the police had no interest in the gunshots, nor did they include Davis' statement in their report. Davis also notified the state's attorney or an investigator about the gunshots.

The court also determined that a jury could have found that Young-Duncan and Gartley, experienced emergency medical technicians, were serving as an ambulance crew on the night in question. They received a call to assist at an automobile accident at the intersection of Albany Avenue and Irving Street. Young-Duncan and Gartley provided the initial medical treatment to the victim and both noted, on the basis of their training and experience, what appeared to be a gunshot wound on his head. Young-Duncan brought the gunshot wound to the attention of an unidentified Hartford police officer at the scene, and he agreed that it appeared to be a gunshot wound.

In addition, the court found that a jury could have determined that Fleury, Fournier's girlfriend, let Fournier borrow her Ford, which was the vehicle involved in the accident. She was not at the scene of the accident, but when Fournier returned home from the hospital, he told Fleury that there had been an incident with three Hispanic males and a gun.

The petitioner also testified at the trial on his habeas petition. On cross-examination, the petitioner admitted that he was present during the incident at Irving Street and Albany Avenue on April 14, 1996. He further admitted that he did not hear any gunshots during the incident, nor did he mention gunshots in any of his statements or in his testimony. The petitioner testified that he could not recall seeing a white Cadillac during the incident.

At the habeas trial, Smith testified that he was aware of all of these witnesses and reviewed all of their statements prior to the petitioner's trial. Smith stated that he did not offer their testimony at trial because he did not want to introduce the possibility that a gun was involved in the incident, thereby subjecting the petitioner to a higher sentence for the crime of manslaughter with a firearm. Smith also testified that he had determined that the testimony of these potential witnesses was not supported by any of the other evidence in the case and that most of the potential witnesses arrived at the scene of the incident after the victim was injured or were not at the scene at all.

The court concluded that "it was harmful to the petitioner and constituted inadequate representation to avoid introducing available and credible evidence of a clearly exculpatory nature in an ill-advised effort to avoid any mention of a firearm." The court agreed with the petitioner's allegations that he had received ineffective assistance of counsel because Smith failed to present important testimony, finding that all four witnesses were credible, law-abiding citizens and that there was no meaningful impeachment of their testimony. The court weighed the testimony of the four witnesses with that of Sharp's statement that had been entered at the criminal trial and concluded that, although the petitioner did not allege actual innocence in his petition for a writ of habeas corpus and did not prove it, the

testimony of Young-Duncan, Fleury, Gartley and Davis that was not presented at the criminal trial "easily" could have led a jury to harbor a reasonable doubt as to the petitioner's guilt. For this reason, the court concluded that the petitioner had undermined the reliability of his conviction. We disagree.

As noted, Smith testified that he did not want to introduce evidence of a gun for fear of introducing a firearm at the scene, lest it be attributed to the petitioner, thereby increasing the sentence he might receive. The petitioner did not indicate in either of his statements to the police, or in his testimony at his criminal trial, that there was an unknown gunman involved in the April 14, 1996 incident. Therefore, the presentation of a defense regarding an unknown gunman would have been rendered implausible by the petitioner himself. In fact, the court noted that "the petitioner's own testimony . . . seems to contradict the existence of [the] white Cadillac and a shooting . . . ." Additionally, in developing the petitioner's defense, Smith weighed the statements of Young-Duncan and Gartley and determined that they were entirely unsupported by any other evidence. No other witness indicated the presence of a gun at the scene, including the petitioner. Additionally, the medical examiner's report and the records from Saint Francis Hospital and Medical Center belied such a contention because there was no stippling or gunshot residue on the head of the victim, there was no indication of an entrance wound or an exit wound and there were no lead fragments found inside the victim's head. In fact, the medical examiner, who had more than twenty years of experience and had performed thousands of autopsies, testified at the criminal trial that the victim had sustained several injuries to various parts of the body as a result of blunt trauma and that the cause of the victim's death was blunt trauma to the head.

Accordingly, we conclude that Smith's decision not to call the four witnesses was a matter of trial strategy. Contrary to our settled law, the court did not accord any deference to Smith's tactical decision or make any attempt to evaluate his conduct from his perspective at the time of the petitioner's criminal trial. Rather, the court employed hindsight to retry the case as if the omitted testimony had been offered and admitted, and the court engaged in speculation that the testimony would have been credited even though it was inconsistent with the petitioner's version of the events and all of the forensic evidence. Consequently, the court improperly determined that the performance of counsel was deficient.

The judgment is reversed and the case is remanded for appropriate action with respect to counts two and three of the petition for a writ of habeas corpus.

In this opinion the other judges concurred.